[Crim. No. 22971. July 21, 1983.]

THE PEOPLE, Plaintiff and Appellant, v.
JAMES EDWARD CONNER, Defendant and Respondent.

COUNSEL

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Robert R. Granucci and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Appellant.

William Holley, Edward Mahler and McManis & Holley for Defendant and Respondent.

OPINION

**RICHARDSON, J.**—The People challenge the trial court's recusal of the entire Santa Clara County District Attorney's office (hereinafter DA). The recusal was ordered because of an appearance of conflict created by the fact that a deputy district attorney who was employed in that office was both a witness to, and arguably a victim of, the criminal conduct giving rise to the offenses for which defendant is being prosecuted. We affirm the trial court's ruling that section 1424 of the Penal Code (further statutory references are to this code) requires such a recusal whenever there exists a conflict of interest so grave in nature as to render it unlikely that defendant otherwise will receive a fair trial.

In 1980, defendant James Edmund Conner was charged with armed robbery, burglaries, possession of stolen property and forgery. These charges were prepared and prosecuted by Deputy District Attorney Braughton, director of a three-attorney career criminal unit in the DA's office.

On February 17, 1981, while awaiting the commencement of defendant's trial on the foregoing charges, Braughton was in a courtroom speaking with a judge. At that time, defendant was in the custody of a deputy sheriff in a nearby jury room. Braughton then heard loud noises emanating from the room where defendant was being held. These were followed by the sound of a bullet hitting the wall. Braughton ran to the jury room and saw defendant holding a revolver and the deputy sheriff bent over in front of him. (It was later established that the deputy had been stabbed and shot.) Defendant turned around, and, after establishing eye contact with Braughton, swung

his arm with the revolver toward Braughton, who immediately turned and ran from the room. As he did so, he heard the sound of a gunshot and saw a bullet hole in the wall approximately two feet from where he had been standing. Braughton was uncertain whether that hole was caused by the impact of a previous bullet or by that which had just been fired. Defendant then escaped but was promptly apprehended.

Braughton reported the incident to his immediate supervisor, made a written report to the district attorney, and subsequently discussed his experience directly with approximately 10 of the 25 deputy felony prosecutors in his office. Some of these conversations occurred in the course of routine office procedures relative to this case. Shortly thereafter, Braughton was interviewed by the news media, during which, in addition to describing the event, Braughton characterized defendant both as a dangerous felon and as an escape risk.

After the incident, all of the People's cases against defendant were reassigned from Braughton to Deputy District Attorney Nudelman, who although one of the 25 felony prosecutors in the office, was not a member of Braughton's unit. While not described as close friends, Braughton and Nudelman attended the weekly felony deputies' meetings. At no time, however, did Braughton discuss the case with Nudelman.

Following the February 17 incident, defendant was charged additionally with assault on a police officer (§ 245, subd. (b)), escape (§ 4530, subd. (a)), and escape from prison with force (§ 4532, subd. (b)); enhancements of use of deadly weapon in commission of a felony (§ 12022. subd. (b)), and inflicting great bodily harm in the commission of felony (§ § 12022.5, 12022.7) were added to each of the charges. He was not charged with any crime for his actions against Braughton.

Defendant moved for a change of venue and for recusal of the judge and of the entire DA's office from all of the pending prosecutions. At the hearing concerning the recusal of the DA's office, Braughton was the sole witness. He testified that he considered himself a witness, not a victim (although he had been in momentary fear), that he did not believe that defendant had intended to lure him into a dangerous position, that he had not discussed the event or the case with Nudelman, and that the February 17 incident had not resulted in any change in the dispositional offer previously made to defendant in connection with his prior charges.

Defendant contended that the court should recuse the entire DA's office if it could be demonstrated that there was at least an "appearance of conflict." If, on the other hand, the standard for recusal required an "actual

conflict," defendant acknowledged that he had not presented any "hard evidence that there is prejudice within the [DA's] office [toward defendant] or pressure exerted upon Mr. Nudelman."

The trial court denied the motions for change of venue, recusal of the judge and recusal of the DA's office with respect to the original burglary and forgery charges, finding neither a conflict of interest nor prejudice to defendant. In regard to the escape charges, however, the court granted the motion to recuse the entire DA's office based upon the fact that Braughton was a witness to the event and a potential victim.

The People's position is that recusal should not be granted unless an "actual conflict" appears. It is contended that such evidence is lacking and that, in fact, the record tended to demonstrate the absence of such conflict.

Historically, courts have recognized their power to recuse in order both to assure fairness to the accused and to sustain public confidence in the integrity and impartiality of the criminal justice system. (*People* v. *Rhodes* (1974) 12 Cal.3d 180, 185 [115 Cal.Rptr. 235, 524 P.2d 363]; *Chadwick* v. *Superior Court* (1980) 106 Cal.App.3d 108, 114 [164 Cal.Rptr. 864]; *People* ex rel. *Younger* v. *Superior Court* (1978) 86 Cal.App.3d 180, 186 [150 Cal.Rptr. 156].)

Recently, in *People* v. *Superior Court* (*Greer*) (1977) 19 Cal.3d 255 [137 Cal.Rptr. 476], 561 P.2d 1164], we explored the rationale underlying a recusal noting: "A fair and impartial trial is a fundamental aspect of the right of accused persons not to be deprived of liberty without due process of law. [Citations.]

" . . . . . . . . . . . . . . . . . . . . . . . . .

" [¶] . . . A district attorney may thus prosecute vigorously, but both the accused and the public have a legitimate expectation that his zeal, as reflected in his tactics at trial, will be born of objective and impartial consideration of each individual case.

" . . . . . . . . . . . . . . . . . . . . . . . . .

" [¶] . . . [Thus] we conclude that a trial judge may exercise his power to disqualify a district attorney from participating in the prosecution of a criminal charge when the judge determines that the attorney suffers from a conflict of interest which might prejudice him against the accused and thereby affect, or appear to affect, his ability to impartially perform the discretionary function of his office." (Pp. 266, 267, 269, fns. omitted.)

Under our *Greer* standard, a conflict of interest disqualifies a DA from prosecuting a case if the conflict either affects or appears to affect his ability faithfully to perform the discretionary function of his office. Since 1977, *Greer* has been consistently applied. (See *Chadwick* v. *Superior Court, supra,* 106 Cal.App.3d 108 [recusal denied when DA currently assigned to represent juvenile had previously represented defendant while attorney in public defender's office]; *People* v. *Municipal Court* (*Henry*) (1979) 98 Cal.App.3d 690 [159 Cal.Rptr. 639] [DA alleged to be victim of similar crime; recusal denied for lack of DA's personal involvement in crime]; *Younger* v. *Superior Court* (1978) 77 Cal.App.3d 892 [144 Cal.Rptr. 34] [recusal ordered when defendant's previous private attorney appointed to high position in DA's office]; *People* v. *Battin* (1978) 77 Cal.App.3d 635 [143 Cal.Rptr. 731, 95 A.L.R.3d 248] [recusal denied despite DA's alleged personal animosity, involvement in previous civil suit, and service as witness].)

In 1980 the Legislature enacted section 1424, which provides, in relevant part, "The motion [to recuse] shall not be granted unless it is shown by the evidence that a conflict of interest exists such as would render it unlikely that the defendant would receive a fair trial." This standard differs from that enunciated by us in *Greer*. While section 1424 does not specify whether the disqualifying conflict must be "actual" or need only generate the "appearance of conflict," in either event, the conflict must be of such gravity as to render it unlikely that defendant will receive a fair trial unless recusal is ordered.

Several factors in combination persuade us that the section contemplates both "actual" and "apparent" conflict when the presence of either renders it unlikely that defendant will receive a fair trial. Traditionally, conflicts raised in varied contexts have involved both actuality and appearance. (See, e.g., *Kimura* v. *Roberts* (1979) 89 Cal.App.3d 871, 875 [152 Cal.Rptr. 569] [conflict of interest in public office]; Cal. Code of Jud. Conduct, canon 2 [impropriety and the appearance thereof]; ABA Code of Prof. Responsibility, EC 5-9 [conflict when attorney is witness]; 6 Wigmore, Evidence (Chadbourn rev. ed. 1976) § 1911, pp. 775-780 [attorney as witness].) Further, the legislative history of section 1424 reflects concern about the effects of the elimination of the "appearance of conflict" standard. While it is conceivable that an "appearance" of conflict could signal the existence of an "actual" conflict which, although prejudicial to the defendant, might be extremely difficult to prove, we think that the additional statutory requirement (that a conflict exist such as would render it unlikely that the defendant would receive a fair trial) renders the distinction between "actual" and "appearance" of conflict less crucial.

In our view a "conflict," within the meaning of section 1424, exists whenever the circumstances of a case evidence a reasonable possibility that the DA's office may not exercise its discretionary function in an evenhanded manner. Thus, there is no need to determine whether a conflict is "actual," or only gives an "appearance" of conflict.

The DA's office is obligated not only to prosecute with vigor, but also to seek justice. This theme was stressed almost half a century ago by the United States Supreme Court in *Berger* v. *United States* (1935) 295 U.S. 78, 88 [79 L.Ed.1314, 1321, 55 S.Ct. 629], "[The prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."

It seems clear that Braughton's status as a witness to, and a potential victim of, defendant's alleged criminal conduct would affect his relationship with the criminal proceedings. We neither doubt nor question Braughton's complete honesty and integrity in describing his responses to the incident. However, his harrowing experience and understandable emotional involvement in this case were communicated to his fellow workers via his own conversations with a substantial number of the DA's personnel and also through the media coverage and interviews concerning the incident. Because of the dramatic and gripping nature of the circumstances, the pervasiveness of the communications regarding Braughton's relationship to the incident, and the difficulty in gauging their cumulative effect, we conclude that substantial evidence supported the trial court's determination that there was a conflict of interest in this case.

Was this conflict so grave as to render it unlikely that defendant will receive fair treatment during all portions of the criminal proceedings? In answering this question, we examine the relevant factors of the size of the office, the communication of the threat by Braughton to his coworkers, the seriousness of the apparent threat to Braughton's safety and the impact of Braughton witnessing the serious injuries actually inflicted on the peace officer.

Braughton is inextricably involved in this case. He disclosed that involvement to a substantial number of his fellow workers. Because the felony division of the DA's office is composed of about 25 attorneys, we have no difficulty in assuming that there is a commendable camaraderie which exists among these officials. It is reasonable to conclude that an apparent threat to one deputy coupled with his witnessing the serious injury actually inflicted on the deputy sheriff during the same course of events may well prejudice

the coworkers of Braughton and the deputy sheriff. While it may be difficult, if not impossible, to prove that a bias of the DA's office will *definitely* affect the fairness of a trial, the trial court is in a better position than are we to assess the likely effect of the shooting incident. We will not disturb the court's conclusion that the DA's discretionary powers exercised either before or after trial (e.g., plea bargaining or sentencing recommendations), consciously or unconciously, could be adversely affected to a degree rendering it unlikely that defendant would receive a fair trial.

■ We review, of course, the trial court's decision only to determine whether there was substantial evidence presented to support its holding. ■ "Substantial evidence" means that evidence which, when viewed in light of the entire record, is of solid probative value, maintains its credibility and inspires confidence that the ultimate fact it addresses has been justly determined. (*People* v. *Perry* (1979) 100 Cal.App.3d 251, 259 [161 Cal.Rptr. 108]; see *People* v. *Bassett* (1968) 69 Cal.2d 122, 137-138 [70 Cal.Rptr. 193, 443 P.2d 777].)

While, singly, in this case the circumstances upon which the court relied in reaching its determination may be insufficient to render a fair trial unlikely, in combination, the aggregate effect of these factors is sufficient to sustain the trial court's ruling.

We affirm the trial court's order recusing the DA's office from the further prosecution of this case.

Bird, C. J., Mosk, J., Kaus, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

Appellant's petition for a rehearing was denied August 25, 1983, and the opinion was modified to read as printed above.