[Nos. AO21755. AO21780. First Dist., Div. Three. Sept. 7, 1983.]

REMIE A. TRUJILLO, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Hughes & Gaines and Kevin Gaines for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, Ronald E. Niver and Robert R. Granucci, Deputy Attorneys General, for Real Party in Interest.

OPINION

FEINBERG, J.—These two petitions challenge two different rulings upholding the San Francisco District Attorney's office's failure to recuse itself from prosecuting petitioner for attempted escape and assault. Applying the

test and the principles stated in the California Supreme Court's recent decision in *People* v. *Conner* (1983) 34 Cal.3d 141 [193 Cal.Rptr. 148, 666 P.2d 5], we sustain the lower court's rulings.

Petitioner is charged with attempted escape (Pen. Code, § 4532, subd. (b)), and assault with a deadly weapon and by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)). At the preliminary examination, Deputy District Attorney Hugh Levine testified that he had prosecuted petitioner during a murder trial ending October 15, 1982. On that date, after the jury returned its guilty verdict, petitioner bolted for the courtroom door. Mr. Levine ran after him and tackled him, bringing them both to the floor. In a violent struggle, Levine's glasses were knocked off and his face clawed. Petitioner was strangling Levine with his own necktie when he was pulled off.

After the incident, Mr. Levine did not file a complaint or a witness report, but in anticipation of a possible workers' compensation claim he had his wife take two color photographs of his face. The sheriff's department in vestigated the incident and presented a report to Assistant District Attorney John Dwyer, who made the decision to charge petitioner. Before making the decision, he obtained petitioner's file from Mr. Levine's office. He obtained the file to facilitate charging petitioner's prior convictions in the complaint. Mr. Dwyer told Mr. Levine that he intended to file escape and assault charges; Dwyer then assigned investigators and an attorney to the case. Mr. Dwyer explained that the decision to charge petitioner with escape was based upon the courtroom setting for the escape, and not upon the status of the victim as prosecuting attorney as opposed to a judge or defense attorney.

The San Francisco District Attorney's office contains between 65 and 70 felony prosecutors. The case was assigned to Assistant District Attorney Frank Passaglia, who works in a different unit from Mr. Levine. After the incident, Mr. Levine discussed it with people in the office who asked about him. But discussions "quieted down very quickly" after the incident.

■  Before the preliminary examination, petitioner moved to recuse the San Francisco District Attorney's office. The motion was heard and denied. In superior court, after petitioner was held to answer, he moved both to recuse the district attorney's office and to dismiss the information pursuant to Penal Code section 995 because of failure to recuse the district attorney's office from conducting the preliminary examination. After hearing testimony, the court denied both motions. These two petitions followed, one challenging each ruling.

Penal Code section 1424 provides the procedure for seeking to disqualify a district attorney from prosecuting a criminal case. It provides in part that

"[t]he motion shall not be granted unless it is shown by the evidence that a conflict of interest exists such as would render it unlikely that the defendant would receive a fair trial." The section does not specify whether the disqualifying conflict must be "actual" or need only generate the "appearance of conflict." In *People* v. *Conner, supra,* 34 Cal.3d 141, on facts bearing some similarity to those present here, the Supreme Court interpreted Penal Code section 1424 in such a way as to minimize the importance of the distinction between actual conflict and the appearance of conflict.

In *Conner,* a defendant awaiting trial obtained a deputy sheriff's revolver and attempted an escape. He shot and stabbed the deputy and narrowly missed the prosecuting attorney with a bullet. The trial court recused the entire district attorney's office from prosecuting the escape charge arising from the incident. In sustaining the trial court ruling, the *Conner* court traced the law on recusal:

"Historically, the courts have recognized their power to recuse in order both to assure fairness to the accused and to sustain public confidence in the integrity and impartiality of the criminal justice system. (*People* v. *Rhodes* (1974) 12 Cal.3d 180, 185 [115 Cal.Rptr. 235, 524 P.2d 363]; *Chadwick* v. *Superior Court* (1980) 106 Cal.App.3d 108, 114 [164 Cal.Rptr. 864]; *People* ex rel. *Younger* v. *Superior Court* (1978) 86 Cal.App.3d 180, 186 [150 Cal.Rptr. 156].)

"Recently, in *People* v. *Superior Court (Greer)* (1977) 19 Cal.3d 255 [137 Cal.Rptr. 476, 561 P.2d 1164], we explored the rationale underlying a recusal noting: 'A fair and impartial trial is a fundamental aspect of the right of accused persons not to be deprived of liberty without due process of law. [Citations.] . . . [¶] . . . A district attorney may thus prosecute vigorously, but both the accused and the public have a legitimate expectation that his zeal, as reflected in his tactics at trial, will be born of objective and impartial consideration of each individual case. . . . [¶] . . . [Thus] we conclude that a trial judge may exercise his power to disqualify a district attorney from participating in the prosecution of a criminal charge when the judge determines that the attorney suffers from a conflict of interest which might prejudice him against the accused and thereby affect, or appear to affect, his ability to impartially perform the discretionary function of his office.' (Pp. 266, 267, 269, fns. omitted.)

"Under our *Greer* standard, a conflict of interest disqualifies a DA from prosecuting a case if the conflict either affects or appears to affect his ability faithfully to perform the discretionary function of his office. Since 1977, *Greer* has been consistently applied. (See *Chadwick* v. *Superior Court, supra,* 106 Cal.App.3d 108 [recusal ordered when DA currently assigned to

represent juvenile had previously represented defendant while attorney in public defender's office]; *People* v. *Municipal Court (Henry)* (1979) 98 Cal.App.3d 690 [159 Cal.Rptr. 639] [DA alleged to be victim of similar crime; recusal denied for lack of DA's personal involvement in crime]; *Younger* v. *Superior Court* (1978) 77 Cal.App.3d 892 [144 Cal.Rptr. 34] [recusal ordered when defendant's previous private attorney appointed to high position in DA's office]; *People* v. *Battin* (1978) 77 Cal.App.3d 635 [143 Cal.Rptr. 731, 95 A.L.R.3d 248] [recusal ordered because of DA's alleged personal animosity, involvement in previous civil suit, and service as witness].)

"In 1980 the Legislature enacted section 1424, which provides, in relevant part, 'The motion [to recuse] shall not be granted unless it is shown by the evidence that a conflict of interest exists such as would render it unlikely that the defendant would receive a fair trial.' This standard differs from that enunciated by us in *Greer*. While section 1424 does not specify whether the disqualifying conflict must be 'actual' or need only generate the 'appearance of conflict,' in either event, the conflict must be of such gravity as to render it unlikely that defendant will receive a fair trial unless recusal is ordered.

"Several factors in combination persuade us that the section contemplates both 'actual' and 'apparent' conflict when the presence of either renders it unlikely that defendant will receive a fair trial. Traditionally, conflicts raised in varied contexts have involved both actuality and appearance. (See, e.g., *Kimura* v. *Roberts* (1979) 89 Cal.App.3d 871, 875 [152 Cal.Rptr. 569] [conflict of interest in public office]; Cal. Code of Jud. Conduct, canon 2 [impropriety and the appearance thereof]; ABA Code of Prof. Responsibility, EC 5-9 [conflict when attorney is witness]; 6 Wigmore, Evidence (Chadbourn rev. 1976) § 1911, pp. 775-780 [attorney as witness].) Further, the legislative history of section 1424 reflects concern about the effects of the elimination of the 'appearance of conflict' standard. While it is conceivable that an 'appearance' of conflict could signal the existence of an 'actual' conflict which, although prejudicial to the defendant, might be extremely difficult to prove, we think that the additional statutory requirement (that a conflict exist such as would render it unlikely that the defendant would receive a fair trial) renders the distinction between 'actual' and 'appearance' of conflict less crucial.

"In our view a 'conflict,' within the meaning of section 1424, exists whenever the circumstances of a case evidence a reasonable possibility that the DA's office may not exercise its discretionary function in an evenhanded manner. Thus, there is no need to determine whether a conflict is 'actual,' or only gives an 'appearance' of conflict." (34 Cal.3d at 146-148.)

We consider it significant that in *Conner* the trial court recused the district attorney's office, while here the trial court refused to recuse. *Conner* emphasized that our role is only to review the trial court decision to determine whether it is supported by substantial evidence and also explained that its decision was based upon the combined effect of various factors present there. (*Id.*, at p. 149.)

In the *Conner* court's words, the incident there was "harrowing," the circumstances "dramatic and gripping," and the communications about the incident "pervasive." Because there were but 25 attorneys in the felony division of the district attorney's office, the *Conner* court had "no difficulty in assuming that there [was] a commendable camaraderie which [existed] among these officials." (*Id.* at p. 148.)

Here, the incident as described by Mr. Levine was neither harrowing, nor particularly dramatic. Moreover, as observed by the trial court the San Francisco District Attorney's office is a large office. Communication about the event was minimal, the charging assistant district attorney having read about it in the newspaper and not even discussed it with Mr. Levine. Under these circumstances, we find the trial court's ruling supported by substantial evidence.

The alternative writs are discharged and the petitions for peremptory writs are denied.

White, P. J., and Barry-Deal, J., concurred.