[No. H002165. Sixth Dist. Feb. 10, 1988.]

THE PEOPLE, Plaintiff and Appellant, v.
TOR McPARTLAND et al., Defendants and Respondents.

COUNSEL

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Dane R. Gillette and Thomas A. Brady, Deputy Attorneys General, for Plaintiff and Appellant.

Ronald S. Morrow, Larry L. Scissors and Steve A. Slatkow for Defendants and Respondents.

OPINION

AGLIANO, P. J.—

## I

### Introduction

The trial court disqualified the Monterey County District Attorney's office from further participation in this prosecution of defendants Tor McPartland and William DiLorenzo because of what the court determined was the *appearance* of a conflict of interest. On the People's appeal, we will reverse the order, finding the trial court applied an erroneous test for recusal.

## II

### Evidence

Defendants' recusal motion in superior court was based primarily on evidence introduced in the preliminary examination, following which defendants were held to answer for various marijuana offenses occurring between September 1981 and August 1985. Defendants were arrested after

the search of McPartland's residences on August 1, 1985, revealed the presence of marijuana, paraphernalia, and $63,838.05.

Yvonne Diane Evans (nee Cox) testified to the defendants' criminal activities on dates prior to August 1, 1985. Evans was married to defendant DiLorenzo between March 1981 and January 1985. She is also the sister of Richard Cox, a City of Pacific Grove police officer on temporary assignment as an investigator for the Monterey County District Attorney.

When defendant DiLorenzo was Cox's brother-in-law, he and Cox occasionally socialized at family gatherings, but Cox was assertedly unaware of the substantial drug involvement of DiLorenzo and his sister. In 1984, Cox and DiLorenzo entered into a real estate transaction together where each was to contribute $500. DiLorenzo did not keep his end of the bargain and Cox was forced to make up the difference.

Evans admitted her feelings for DiLorenzo were less than cordial, in part, because she felt he and his lawyer had cheated her out of $75,000 in their divorce. In July 1985, she called DiLorenzo's divorce attorney, denounced defendant's friends and stated she would have DiLorenzo fixed and arrested if she were not reimbursed.

On July 18, 1985, Evans called DiLorenzo and demanded recompense for her contribution to their real property. Her then-boyfriend, Ron Morris, overheard the conversation and testified that she threatened to have DiLorenzo and his friends arrested by her brother unless he paid her $10,000. After the phone call, Evans told Morris's father she was going to have defendants and their drug friends put away.

Evans called her brother after her phone conversation with DiLorenzo on July 18, 1985. Cox testified he had already been investigating both defendants while working out of the district attorney's office prior to this call. Cox told her to call Manuel Amorin, another investigator for the Monterey County District Attorney with whom he shared office space. Evans told Cox and Amorin she wanted to provide information on defendants' involvement in drug sales.

About a week after July 18, 1985, Cox personally introduced Evans to Amorin. After the introduction, Cox tried to stay out of the conversation, but what he heard confirmed other reports about defendants' marijuana dealings. Amorin assured Evans she would receive immunity for her own involvement in defendants' drug dealings.

Cox was the affiant for the August 1, 1985, warrants authorizing the search of McPartland's two houses. His affidavit related information from

three confidential informants who had spoken with him and one confidential informant who had spoken with Amorin, possibly Evans. Evans told Morris that she was the only informant against defendants. The preliminary examination evidence about defendant McPartland's activities on August 1, 1985, was given by several police officers who executed the search warrants.

Sometime after August 1, 1985, Evans submitted an informer's claim to the Internal Revenue Service (IRS) regarding defendants. She told Morris that her brother Richard would manage any money she received from this claim. Cox had spoken several times with the IRS agent about his sister's claim.

On March 27, 1986, Cox told Morris in a phone call to stay out of the situation since he did not know anything about it. The next day Morris signed a declaration supporting defendants with his observations. Evans told him a week later to change it because it jeopardized her brother's job.

### III

### *The Lower Court Ruling*

In recusing the Monterey County District Attorney's office, the lower court reasoned, "Well, first, on the law, I do not think there is any question that the appearance of impartiality [*sic*] is grounds for recusing the District Attorney. The public has to have absolute confidence in the integrity of the criminal justice system. . . . It could be viewed by reasonable members of the public that Mr. Cox is seemingly using his position of influence with the District Attorney to pursue a family vendetta that might exist due to this unfortunate marriage. [¶] I am not saying that is the case; I am saying when you look at the totality of that possible prejudice, reasonable people could come to that conclusion. It could be viewed that anything offered in prosecuting the case might have its inception in the closeness of the witnesses and their relationship, rather than the independent evaluation of the case by the District Attorney."

### IV

### *Discussion*

■ Penal Code section 1424, enacted in 1980, provides that a motion to disqualify a district attorney from performing his or her duties "shall not be granted unless it is shown by the evidence that a conflict of interest exists such as would render it unlikely that the defendant would receive a fair trial." Prior to enactment of the statute, the leading case on recusal was

*People* v. *Superior Court* (*Greer*) (1977) 19 Cal.3d 255 [137 Cal.Rptr. 476, 561 P.2d 1164].

The leading case interpreting section 1424 is *People* v. *Conner* (1983) 34 Cal.3d 141 [193 Cal.Rptr. 148, 666 P.2d 5], which upheld the lower court's recusal of the entire Santa Clara County District Attorney's office when a deputy district attorney had been shot at by the defendant while witnessing the charged offenses of escape and assault on a police officer with a deadly weapon. (*Id.* at pp. 144-145.)

The court recognized, "Under our *Greer* standard, a conflict of interest disqualifies a DA from prosecuting a case if the conflict either affects *or appears to affect* his ability faithfully to perform the discretionary function of his office." (*Id.* at p. 147.) The statute does not eliminate, but deemphasizes the concern for appearances. (*Ibid.*) "In our view a 'conflict,' within the meaning of section 1424, exists whenever the circumstances of a case evidence a reasonable possibility that the DA's office may not exercise its discretionary function in an evenhanded manner. Thus, there is no need to determine whether a conflict is 'actual,' or only gives an 'appearance' of conflict." (*Id.* at p. 148.)

The court observed that the deputy district attorney's involvement in the offenses, which the opinion characterized as "harrowing," "dramatic," and "gripping," was communicated to a substantial number of his fellow employees in an office with 25 attorneys by personal conversations and media interviews. (*Id.* at p. 148.) It continues, "While it may be difficult, if not impossible, to prove that a bias of the DA's office will *definitely* affect the fairness of a trial, the trial court is in a better position than are we to assess the likely effect of the shooting incident. We will not disturb the court's conclusion that the DA's discretionary powers exercised either before or after trial (e.g., plea bargaining or sentencing recommendations), consciously or unconsciously, could be adversely affected to a degree rendering it unlikely that defendant would receive a fair trial." (*Id.* at p. 149; italics in original.)

In *Trujillo* v. *Superior Court* (1983) 148 Cal.App.3d 368 [196 Cal.Rptr. 4], relied on by the Attorney General, the lower court's refusal to disqualify the entire San Francisco District Attorney's office was upheld. The victim of the charged offense of forcible assault with a deadly weapon was a deputy district attorney. (*Id.* at p. 370.) *Trujillo* quotes *Conner* at length, but distinguishes it because the deputy district attorney's communications about the incident were less pervasive and his office contained between 65 and 70 felony prosecutors. (*Id.* at pp. 370, 373.) The court's focus was thus not on

the appearance of conflict but on the actual likelihood that the defendant would be deprived of a fair trial.

*Trujillo* is also consistent with cases predating the statute which teach that recusal of an entire district attorney's office is not a step to be taken lightly, even where one or more deputy district attorneys may be called as witnesses. (*People* v. *Superior Court* (*Hollenbeck*) (1978) 84 Cal.App.3d 491 [148 Cal.Rptr. 704]—order recusing San Luis Obispo County District Attorney's office reversed where one former and three present deputy district attorneys were possible witnesses in pretrial proceedings challenging electronic surveillance of defendants; *People* ex rel. *Younger* v. *Superior Court* (1978) 86 Cal.App.3d 180 [150 Cal.Rptr. 156]—order recusing San Bernardino County District Attorney's office reversed where one deputy district attorney out of ninety five employed in three widespread offices was witness to photographic lineups; *People* v. *Municipal Court* (*Henry*) (1979) 98 Cal.App.3d 690 [159 Cal.Rptr. 639]—order recusing Sacramento County District Attorney's office reversed where one present and one former deputy district attorney were victims of incidents similar to vehicle vandalism charged.)

Trial courts have an advantage in evaluating the evidence and the personalities involved in a case. (Cf. *Conner, supra,* 34 Cal.3d 141, 149.) Our concern is for errors of law which may have affected the decision. In the instant case, it appears the lower court applied the wrong standard in granting recusal. The lower court expressed a concern for the appearance to the general public of partiality and impropriety reminiscent of the *Greer* standard. Under the changed standard enunciated by Penal Code section 1424, the court's primary concern should have been with whether it is reasonably possible based on the evidence that the district attorney's office may employ its discretionary powers to deprive the defendant of a fair trial. An appearance of conflict may well signal the existence of a disabling conflict (*Conner, supra,* 34 Cal.3d 141, 147), but recusal is only warranted in the latter instance.

We realize the difficult burden placed on trial courts in assessing current circumstances to predict the possibility that a defendant will in fact be deprived of fair treatment by the district attorney's exercise of prosecutorial discretion. However, it is obvious from *Conner's* definitive interpretation of Penal Code section 1424 that recusal cannot be warranted solely by how a case may appear to the public.

Finally, we are unable to say with any assurance that the trial court would have reached the same result under the right test. Evans's brother, Cox, was not a permanent employee of the Monterey County District At-

torney. When Evans announced her willingness to provide information about defendants, Cox simply referred her to Amorin and introduced them. According to Cox, his connection to the case was based primarily on information he received independently prior to his sister's contact. It would thus be unduly speculative for us to conclude that the circumstances in evidence here would so influence the whole Monterey County District Attorney's office or any significant part of it as to impair defendants' right to a fair trial.

We recognize that other inferences may be drawn and, as noted above, the trial court is in the best position to evaluate the evidence utilizing the proper legal standard if defendants' recusal motion is renewed.

## V

### *Disposition*

The order of recusal is reversed.

Brauer, J., and Capaccioli, J., concurred.