[No. B054876. Second Dist., Div. Three. Sept. 25, 1991.]

THE PEOPLE, Plaintiff and Appellant, v.
JOE ROBERT HERNANDEZ, Defendant and Respondent.

## Counsel

Daniel E. Lungren, Attorney General, Richard B. Iglehart and George Williamson, Chief Assistant Attorneys General, Edward T. Fogel, Jr., Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Donald E. de Nicola and Richard B. Cullather, Deputy Attorneys General, for Plaintiff and Appellant.

David J. Wilzig for Defendant and Respondent.

## Opinion

**CROSKEY, J.**—The People appeal from an order of the Municipal Court of the Pasadena Judicial District, County of Los Angeles, under Penal Code section 1424,[1] recusing the office of the District Attorney of Los Angeles County and appointing the Attorney General of California to prosecute this felony case.[2]

The defendant, Joe Robert Hernandez, is charged with assault with a deadly weapon upon one Allie Braverman (Pen. Code, § 245, subd. (a)(1)), with the additional allegation that the defendant intentionally inflicted great bodily injury on the victim in the commission of the offense. (§ 12022.7.) The district attorney's office was recused on grounds that a conflict of interest exists, rendering it unlikely that Hernandez will be fairly prosecuted by the district attorney's office, because Hernandez is the victim-witness in a preexisting case in the superior court, in which Braverman is the defendant, making it necessary for the district attorney's office simultaneously to rely upon Hernandez as a witness in the first case and prosecute him in the second. The order of recusal was stayed pending this appeal.

---

[1] Unless otherwise noted, further statutory references are to the Penal Code.

Section 1424 provides in relevant part:

"Notice of any motion to disqualify a district attorney from performing any authorized duty shall be served on the district attorney and the Attorney General at least 10 days before the motion is heard. The notice of motion must set forth a statement of the facts relevant to the claimed disqualification and the legal authorities relied upon by the moving party. The Attorney General may appear at the hearing on the motion and may file with the court hearing the motion a written opinion on the disqualification issue. *The motion shall not be granted unless it is shown by the evidence that a conflict of interest exists such as would render it unlikely that the defendant would receive a fair trial.* An order recusing the district attorney from any proceeding may be appealed by the district attorney or the Attorney General. The order recusing the district attorney shall be stayed pending any appeal authorized by this section. . . ." (Italics added.)

[2] An order of recusal is appealable to this court under section 1424, paragraph 2.

The court acted within its discretion in recusing those deputy district attorneys who were involved in the prosecution of Braverman, as well as those deputies who witnessed the immediate aftermath of Hernandez's assault upon Braverman. However, we find insufficient evidence to justify recusal of the entire office of the district attorney. We thus modify the order of recusal to provide for disqualification only of those deputy district attorneys who participated in the prosecution of Braverman and those who witnessed the aftermath of the assault. As so modified, we affirm the court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

For approximately a year prior to September 12, 1990, a criminal case was pending in the superior court, in which Braverman was the defendant, and Hernandez was the victim-witness. The record does not reflect the exact charge against Braverman, but it appears he was charged with some manner of felonious assault.

On September 12, 1990, during Braverman's trial for assaulting Hernandez, Hernandez and Braverman had an altercation in the courthouse elevator, which ended with Hernandez stabbing Braverman. After Braverman stumbled into the courtroom bleeding and complaining of having been stabbed by Hernandez, a mistrial was declared in the Braverman prosecution.

On September 14, 1990, a complaint was filed charging Hernandez with assaulting Braverman with a deadly weapon and with intentionally inflicting great bodily injury. On September 27, 1990, Hernandez moved the court to have the district attorney's office recused from prosecuting him, on grounds that several deputy district attorneys witnessed Braverman entering the courtroom bleeding, and that the district attorney's office had obtained confidential information about the background of the feud between Hernandez and Braverman in the course of interviewing Hernandez as a witness in the Braverman prosecution.

The court found that recusal of the entire district attorney's office was not justified by the circumstance that several deputy district attorneys had witnessed the aftermath of the assault on Braverman. However, the court granted the recusal motion on grounds that it did not believe Hernandez could receive a fair trial if the district attorney's office were simultaneously relying upon him as a witness in the Braverman case and prosecuting him in his own case.

CONTENTIONS ON APPEAL

The People contend that the municipal court abused its discretion by recusing the entire Los Angeles County District Attorney's office.

DISCUSSION

In determining the propriety of an order recusing a district attorney, or a district attorney's office, a reviewing court applies the abuse-of-discretion standard. (*People* v. *Hamilton* (1988) 46 Cal.3d 123, 140 [249 Cal.Rptr. 320, 756 P.2d 1348].) A recusal order will be found proper if substantial evidence before the trial court established the existence of a conflict of interest that would render it unlikely that the defendant would receive a fair trial unless recusal was ordered. (§ 1424; *People* v. *Conner* (1983) 34 Cal.3d 141, 148 [193 Cal.Rptr. 148, 666 P.2d 5].) Such a conflict exists when the circumstances of the case evidence a reasonable possibility that the office of the district attorney may not exercise its discretionary function in an even-handed manner. (*People* v. *Conner, supra*, 34 Cal.3d at p. 148.)

Where an entire prosecutorial office has been recused, and not simply a particular prosecutor, the showing of a conflict of interest must be especially persuasive. (*People* v. *Lopez* (1984) 155 Cal.App.3d 813, 822 [202 Cal.Rptr. 333].) Recusal of an entire district attorney's office has been found appropriate where intense emotional involvement in the case on the part of one or more employees of the district attorney's office made a fair and impartial prosecution unlikely (*People* v. *Conner, supra*, 34 Cal.3d at pp. 144-145, 148-149; *People* v. *Superior Court* (*Greer*) (1977) 19 Cal.3d 255, 270 [137 Cal.Rptr. 476, 561 P.2d 1164]), and also where, before taking public office, the district attorney himself, not a deputy, was the attorney for the defendant in matters related to the current charges, and necessarily learned confidential information about the underlying facts during such representation. (*People* v. *Lepe* (1985) 164 Cal.App.3d 685, 688-689 [211 Cal.Rptr. 432].) Recusal of an entire district attorney's office is not appropriate merely because one or more deputy district attorneys are witnesses in the case. (*Trujillo* v. *Superior Court* (1983) 148 Cal.App.3d 368, 370, 373 [196 Cal.Rptr. 4]; *People* ex rel. *Younger* v. *Superior Court* (1978) 86 Cal.App.3d 180, 191-192 [150 Cal.Rptr. 156]; *People* v. *Superior Court* (*Hollenbeck*) (1978) 84 Cal.App.3d 491, 502 [148 Cal.Rptr. 704].)

In this case, the municipal court ordered the district attorney's office disqualified, because with the filing of charges against Hernandez and the declaration of a mistrial in the case against Braverman, the district attorney's office was put in the anomalous position of simultaneously

prosecuting Braverman in one case, in which Hernandez was the victim-witness, and prosecuting Hernandez in an inextricably entwined second case, in which Braverman was the victim-witness. The district attorney's office and Hernandez thus *had to* communicate with one another regarding the ongoing prosecution of Braverman, but *could not* communicate about the case against Hernandez. Likewise, the district attorney's office and Braverman now *had to* communicate about the case against Hernandez, but *could not* communicate about the case against Braverman. Matters were further complicated by the fact that Hernandez had already been discussing the Braverman case for nearly a year with one or more members of the district attorney's office, and in the course of such communication, had presumably divulged information reasonably likely to bias their approach to his own prosecution.

Of course, no actual attorney-client relationship ever existed between the district attorney's office and Hernandez as victim-witness in the Braverman case. Thus, no conflict of interest, strictly speaking, arose when Hernandez became a defendant. Further, it is not uncommon for a district attorney's office to prosecute a person who has previously been a prosecution witness. (Cf. *People* v. *Municipal Court* (*Pellegrino*) (1972) 27 Cal.App.3d 193, 207 [103 Cal.Rptr. 645, 66 A.L.R.3d 717].) Still, the frictions inherent in the circumstances of the Braverman and Hernandez cases gave rise to a reasonable possibility that deputy district attorneys who had received information from Hernandez about the Braverman case might not be evenhanded in prosecuting Hernandez. The court could also reasonably conclude there was a possibility that deputies who personally witnessed Braverman entering a court of law bleeding from wounds given by Hernandez might not prosecute Hernandez in an evenhanded manner. The court thus acted within its discretion in recusing those two categories of deputies from the Hernandez case.[3]

Recusal of the entire district attorney's office is another matter, however. Disqualification of an entire prosecutorial office from a case

---

[3]This is not to say that a deputy prosecuting attorney who has personally witnessed a crime must always be disqualified from prosecuting that crime. Unless his involvement is greater than merely having been a witness to the criminal act, there is no basis for assuming a priori that he might not prosecute the accused in an evenhanded manner. We merely hold that under facts known to the court in this case, the court acted within its discretion in disqualifying the deputy prosecutors who witnessed the crime here in question.

When a prosecuting attorney is a witness to a crime, the true danger lies not in his having witnessed the event, but in his performing the dual role of prosecutor and witness. If he is to prosecute the case, and also to testify as a prosecution witness, he should be disqualified. It would be impossible for him to be a part of the evidence and, at the same time, to present that evidence impartially as is his bounden duty. (See, *Berger* v. *United States* (1935) 295 U.S. 78, 88 [79 L.Ed. 1314, 1321, 55 S.Ct. 629].)

is disfavored by the courts, absent a substantial reason related to the proper administration of justice. (*People* v. *Lopez, supra,* 155 Cal.App.3d 813, 821-822; *Love* v. *Superior Court* (1980) 111 Cal.App.3d 367, 371 [168 Cal.Rptr. 577]; *People* ex rel. *Younger* v. *Superior Court, supra,* 86 Cal.App.3d at p. 204.) Thus, even where a deputy district attorney previously was an attorney for a defendant currently being prosecuted, the courts have found it necessary to recuse only that deputy, together with any others with whom he may have discussed the defendant's case. (*People* v. *Lopez, supra,* 155 Cal.App.3d at pp. 827-828; *Love* v. *Superior Court, supra,* 111 Cal.App.3d at p. 374; *Chadwick* v. *Superior Court* (1980) 106 Cal.App.3d 108, 111, 123 [164 Cal.Rptr. 864].) Only where the defendant's former lawyer occupied a supervisory position in the district attorney's office during the defendant's prosecution has it been found necessary to recuse the entire office. (*People* v. *Lepe, supra,* 164 Cal.App.3d, at pp. 686, 689 [Defendant's former lawyer was elected to the office of district attorney and occupied that office while the defendant was being prosecuted for an offense related to matters on which the now-district attorney had represented him].)

In *People* v. *Lopez, supra, Love* v. *Superior Court, supra,* and *Chadwick* v. *Superior Court, supra,* evidence was presented that deputy district attorneys who had formerly represented the defendants had not discussed the defendants' cases with the deputies prosecuting them, and had sworn not to do so. The reviewing courts were thus able to conclude that the ongoing prosecutions were adequately insulated from any prior confidential communications or influences to eliminate the danger of bias or unfairness. (*People* v. *Lopez, supra,* 155 Cal.App.3d at pp. 819, 827; *Love* v. *Superior Court, supra,* 111 Cal.App.3d at pp. 370-371, 374; *Chadwick* v. *Superior Court, supra,* 106 Cal.App.3d at pp. 112, 123.) By contrast, in *People* v. *Lepe, supra,* the court found that where the district attorney evaluated, promoted, and fired the deputies in his office, the office could not be effectively sanitized from considerations barring the district attorney's own personal participation in the case. (164 Cal.App.3d, at p. 689.)

Here, there was no evidence one way or the other as to whether information or impressions obtained from Hernandez by the deputies prosecuting Braverman had permeated, or would permeate, the entire 900-member Los Angeles County District Attorney's office.[4] There was only speculation by Hernandez's attorney that it might have done so. Such sheer speculation does not constitute sufficient evidence of potential bias to recuse an entire prosecutorial office from a case.

[4]Neither party cites any official source of information as to the size of the Los Angeles County District Attorney's office. Nor are we aware of any official count of deputy district attorneys of which judicial notice may be taken. However, both parties estimate the number of deputies at something over 900. We accept that number as a reasonable approximation.

Although not trivial, the problems of insulating the case against Hernandez from the case against Braverman are not insurmountable—not in a prosecuting agency comprised of some 900 attorneys. In an organization of that size, a "Chinese wall" can surely be created between the two cases by assigning the Hernandez prosecution to deputies unacquainted with the Braverman case and by ordering the prosecutors on the two separate cases not to communicate with one another about the cases. (Cf. *Love* v. *Superior Court, supra,* 111 Cal.App.3d at p. 374 [A district attorney's office consisting of 95 deputies was considered large enough for prosecution to be insulated from communications between the prosecuting deputy and a deputy who was the defendant's former attorney]; *People* v. *Lopez, supra,* 155 Cal.App.3d at p. 827 [Despite the "probable intimacy" of a *10-member* district attorney's office, the court found no actual or probable "leak in the wall of silence" between the prosecuting deputy and a deputy who was the defendant's former attorney].)

## DISPOSITION

The order of recusal is modified to apply only to deputy district attorneys who personally witnessed the aftermath of the assault upon Braverman, and to deputy district attorneys who participated in the prosecution of Braverman and in the course of such prosecution, received information either directly from Hernandez, or from deputies or investigators who communicated with Hernandez. As so modified, the court's order is affirmed.

Upon remand, the trial court is directed to make all appropriate orders to insure that no improper communications occur between the prosecutors on the two cases.

Danielson, Acting P. J., and Hinz, J., concurred.