[No. B126913. Second Dist., Div. Four. Mar. 2, 1999.]

BRUCE MILLSAP, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Leo B. Newton for Petitioner.

No appearance for Respondent.

Gil Garcetti, District Attorney, George M. Palmer, Brent Riggs, Kevin J. McCormick and Antony J. Myers, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**EPSTEIN, Acting P. J.**—Bruce Millsap stands charged with 27 felony counts. Eight of these allege first degree murder; the death penalty is sought for each of the eight. For most counts, Millsap is charged with other codefendants. Counts 25 and 26 of the information each alleges that Millsap solicited the murder of a deputy district attorney (DDA) of Los Angeles. Neither target victim is named in the pleading, but it is undisputed that they are, respectively, DDA's Kevin J. McCormick and Antony J. Myers. They are the prosecuting attorneys assigned to the case. Because of that circumstance, Millsap moved to recuse the Los Angeles District Attorney and all of his deputies. The motion was contested and denied. Millsap then sought a writ of mandate or prohibition from this court which would command the trial court to order the recusal he sought. We issued an alternative writ in

which we commanded respondent court to recuse the two deputies from prosecuting counts 25 and 26, or to show cause. The district attorney, real party in interest in these proceedings, has filed a return to our order. After full review of the materials submitted and authorities cited, we have concluded that DDA's McCormick and Myers must be recused from trying counts 25 and 26 of the information—the charges that Millsap solicited their murder—but that no other recusal is warranted.

## DISCUSSION

## I

There is no need to discuss the underlying facts and potential trial issues concerning the multiple counts alleged against Millsap. It is sufficient to say that counts 25 and 26 each allege that on a certain date he solicited one Ricky Caldwell to murder a DDA, which solicitation was a violation of Penal Code section 653f, subdivision (b); and that the two DDA's who were targets of the solicitation are the deputies assigned to try Millsap and his codefendants on all 27 counts of the amended information.

Since 1980, the grounds and procedure for disqualification of a prosecutor have been treated in Penal Code section 1424. At the time the motion to recuse was heard, the pertinent portion of this statute provided that a recusal motion "may not be granted unless the evidence shows that a conflict of interest exists that would render it unlikely that the defendant would receive a fair trial."

The statute replaced an earlier rule, announced in *People v. Superior Court (Greer)* (1977) 19 Cal.3d 255, 266, 267, 269 [137 Cal.Rptr. 476, 561 P.2d 1164], which required disqualification if it was shown that the prosecutor suffered from a conflict of interest "which might prejudice him against the accused and thereby affect, *or appear to affect*, his ability to impartially perform the discretionary functions of his office." (Italics added.) The statute was enacted because of "the substantial increase in the number of unnecessary prosecutorial recusals under the 'appearance of conflict' standard set forth in [*Greer*]." (*People v. Merritt* (1993) 19 Cal.App.4th 1573, 1578 [24 Cal.Rptr.2d 177].)

■ The statute differs from *Greer* in that it does not specify whether the disqualifying conflict must be "actual" or "apparent" but requires that it be "of such gravity as to render it unlikely that defendant will receive a fair trial unless recusal is ordered." (*People v. Conner* (1983) 34 Cal.3d 141, 147 [193 Cal.Rptr. 148, 666 P.2d 5].) As restated by the Supreme Court in a later case,

*Conner* eliminated appearance of impropriety as an independent ground for recusal. (*People* v. *Eubanks* (1996) 14 Cal.4th 580, 592 [59 Cal.Rptr.2d 200, 927 P.2d 310].) The requisite conflict "must be real, not merely apparent, and must rise to the level of a *likelihood* of unfairness." (*Ibid.*, italics in original.) Unlike the *Greer* standard, the statute does not allow disqualification because participation of the prosecutor would be unseemly, appear improper, or even reduce public confidence in the criminal justice system. An actual likelihood of prejudice to defendant must be shown. (*Ibid.*) "[R]ecusal cannot be warranted solely by how a case may appear to the public." (*People* v. *McPartland* (1988) 198 Cal.App.3d 569, 574 [243 Cal.Rptr. 752].) There is, then, a two-part test: whether there is a conflict of interest, and whether it is so grave as to result in the likelihood of actual prejudice to the defendant. (*People* v. *Eubanks*, *supra*, 14 Cal.4th at p. 592.)

The court has held that a conflict exists under the statute when "the circumstances of a case evidence a reasonable possibility that the DA's office may not exercise its discretionary function in an evenhanded manner." (*People* v. *Conner*, *supra*, 34 Cal.3d at p. 148.) The prosecutorial discretion goes beyond the decision of what charges to file and the trial itself; it extends to all portions of the proceedings. (*People* v. *Eubanks*, *supra*, 14 Cal.4th at p. 592.)

Our review involves both the substantial evidence test and examination for abuse of discretion. Factual issues are resolved under the substantial evidence test: whether there is substantial evidence to support factual determinations reached by the trial court. (*People* v. *Conner*, *supra*, 34 Cal.3d at p. 149; *People* v. *Breaux* (1991) 1 Cal.4th 281, 293 [3 Cal.Rptr.2d 81, 821 P.2d 585]; *Trujillo* v. *Superior Court* (1983) 148 Cal.App.3d 368, 373 [196 Cal.Rptr. 4].) Once the pertinent factual issues are settled, the question whether the trial court's ruling should be upheld is determined under the deferential abuse of discretion test. (See *People* v. *Conner*, *supra*, 34 Cal.3d at p. 149; *People* v. *Turner* (1994) 8 Cal.4th 137, 162 [32 Cal.Rptr.2d 762, 878 P.2d 521].)

With this framework in mind, we consider, first, whether the entire prosecutorial office must be recused and, second, whether the particular prosecutors must be recused and, if so, from what.

## II

"[R]ecusal of an entire prosecutorial office is a serious step, imposing a substantial burden on the People, and the Legislature and courts may reasonably insist upon a showing that such a step is necessary to assure a fair

trial." (*People* v. *Hamilton* (1989) 48 Cal.3d 1142, 1156 [259 Cal.Rptr. 701, 774 P.2d 730].) It is a disfavored remedy that should not be applied unless justified by a substantial reason related to the proper administration of justice. (*People* v. *Hernandez* (1991) 235 Cal.App.3d 674, 679 [286 Cal.Rptr. 652]; *People* v. *Merritt, supra*, 19 Cal.App.4th at p. 1578.) The showing of conflict of interest necessary to justify so drastic a remedy must be especially persuasive. (*People* v. *Hernandez, supra*, 235 Cal.App.3d at p. 678.)

*People* v. *Conner* is the leading case. Its factual setting is enlightening. Conner was on trial for various felonies in Santa Clara County. DDA Braughton was the director of a three-attorney unit responsible for prosecuting the class of case in which this prosecution fell. Braughton heard a commotion in the jury room and, upon entering, encountered Conner who had a gun in his hand. A deputy sheriff was bent over in front of Conner. (It later turned out that Conner had stabbed the deputy.) Conner and Braughton made eye contact, upon which Conner swung the arm holding the gun toward Braughton. The gun fired as Braughton ran out of the room; he was not hit. Braughton reported the incident to his superior, and discussed it with 10 of the 25 DDA's assigned to felony trials. The court assumed that all of the felony trial deputies learned of the incident. The case was assigned to a deputy from another unit, but Conner moved to disqualify the entire office. The trial court granted his motion as to the new charges of escape and assault on the deputy sheriff, but denied it as to the other charges that were pending at the time of the courthouse crimes. (No charge was filed alleging an assault on Braughton.) That ruling was affirmed. As the court framed the issue, it was whether the conflict of interest created by the DDA's' involvement in these newly charged crimes created a conflict "so grave as to render it unlikely that defendant will receive fair treatment during all portions of the criminal proceedings." (34 Cal.3d at p. 148.) More precisely, the question was whether the trial court reached a supportable conclusion in answering that question in the affirmative. (*Id.* at p. 149.) The Supreme Court considered the size of the office, communication of the threat by Braughton to his coworkers, seriousness of the threat to his safety, and the impact of his witnessing the serious injuries actually inflicted on the deputy sheriff. (*Id.* at p. 148.)

Braughton had had a "harrowing experience," and his understandable emotional involvement was communicated to his fellow workers through his own conversations as well as by media coverage; he was a witness; the office consisted of only 25 felony trial DDA's; and the threat to Braughton was quite serious. From these circumstances, it was reasonable to conclude that a failure to recuse the district attorney's office "may well prejudice the

coworkers of Braughton and the deputy sheriff. While it may be difficult, if not impossible, to prove that a bias of the DA's office will *definitely* affect the fairness of a trial, the trial court is in a better position than are we to assess the likely effect of the shooting incident. We will not disturb the court's conclusion that the DA's discretionary powers exercised either before or after trial (e.g., plea bargaining or sentencing recommendations), consciously or unconsciously, could be adversely affected to a degree rendering it unlikely that defendant would receive a fair trial." (*People* v. *Conner, supra,* 34 Cal.3d at pp. 148-149, italics in original.)

*Trujillo* v. *Superior Court, supra,* 148 Cal.App.3d 368, provides a useful counterpoint. That case arose out of a felony trial in San Francisco, where the prosecutor's office had a staff of 65 to 70 DDA's assigned to felony trials. When guilty verdicts were returned against Trujillo, he bolted out the door. The prosecutor ran after him and tackled him. A violent struggle ensued, during which the prosecutor's glasses were knocked off his head, the defendant clawed the prosecutor's face, and attempted to strangle him with a tie. An assistant district attorney reviewed these circumstances and decided to file charges for the attempted escape. The case was assigned to another attorney. Nevertheless, the defendant sought to recuse the entire prosecutorial office. His motion was denied, and the ruling was affirmed. The reviewing court pointed out the contrasts with the *Conner* case: the incident was not harrowing or particularly dramatic, the prosecutorial staffing was considerably larger, and the deputy attacked had not been communicating his experience. (*Id.* at p. 373.) The court found it significant that in *Conner* the trial court had recused the entire office of the district attorney, while in this case the trial court refused to do so. "*Conner* emphasized that our role is only to review the trial court decision to determine whether it is supported by substantial evidence and also explained that its decision was based upon the combined effect of various factors present there." (*Ibid.*)

In our case, we deal with what is said to be the largest prosecutorial office in the nation. The papers before us do not reveal the exact staffing, but we note that in *People* v. *Hernandez, supra,* 235 Cal.App.3d at page 680, the office was described as having a staff of 900. (*Ibid.* [] from context, we assume the court was referring to the number of DDA's [].) The circumstances of the case before us do not present a "harrowing" or dramatic experience for the prosecutor, such as those faced by the prosecutor in *Conner,* or even *Trujillo.* (It is, however, certainly more than a matter to be taken in stride, as the real party in interest's return suggests [threats to prosecutors "come with the territory"].) As the *Hernandez* court points out (*id.* at p. 681), the Los Angeles District Attorney's office is a very large operation. There is no showing of widespread communication within the

district attorney's office or extensive media coverage of Millsap's alleged solicitation of the murder of the prosecutors, and the prosecutors did not witness any physical action by Millsap.

Applying *Conner*'s two-step approach, we find no conflict of interest such as to justify recusal of the entire district attorney's office. The trial judge who had presided over the case, and who was familiar with the parties and their counsel, found no basis for recusal. Some of the transcripts upon which Millsap's counsel sought to rely had not been available to him, and the judge agreed to revisit the recusal issue if counsel should ask that he do so after reviewing these documents. Apparently that request was made, for at a later hearing the judge stated that, after reviewing the transcripts, he again found no basis to recuse the district attorney. Even if a conflict of interest were inferable from the facts of the case, there is no showing that Millsap would suffer actual prejudice merely because the Los Angeles District Attorney's office remains as prosecutor. We note that, in *Conner*, the court did not disturb the trial court's ruling that the office continue to prosecute the other charges in that case.

There is a further consideration, which we do not find discussed in the California cases, but which was a matter of real and legitimate concern to the trial judge in this case. If it were possible to recuse the entire office by fomenting some kind of a threat against the trial deputy, defendants bent upon delay or other obstruction, or just wanting to be rid of an effective prosecutor, would have the means to accomplish that objective. They shall not receive it from this court.

### III

That takes us to whether the assigned DDA's should be recused. Millsap's motion was to recuse the entire district attorney's office, but the lesser remedy is subsumed in the greater, and was argued. In oral argument, Millsap's attorney confirmed that if he can achieve nothing more, he would like us to at least order recusal of the alleged target DDA's from trying him for soliciting their murder. For its part, the prosecutor argues that, if need be, the solicitation of murder counts should be severed, although that issue was not developed before the trial court. As we have stated, our alternative writ was specifically directed at this limited recusal.

We agree with Millsap that a real potential for actual prejudice would be established if the DDA's whose murders he is alleged to have solicited were to prosecute him for those crimes. The prosecutor makes a belabored argument that the DDA's are not "victims" because the object of the

solicitation was not accomplished. That is hardly persuasive. They were the targets of the alleged solicitation and, while it is reasonable to conclude that the office can and will properly exercise its discretionary duties in general, expecting that kind of objectivity from the target victims on these counts is to demand too much. The prosecutor argued to the trial court that the counts do not name the victims, and suggested that they may be tried in some kind of hypothetical form. The artificiality of proceeding in that way is manifest. Certainly issues of motive and related questions of Millsap's intent, as well as the actual statements he made in the solicitation, will have to come before the jury. Otherwise the case would be artificial indeed. We conclude that, in the words of the statute, having the intended victim of a crime prosecute a defendant for commission of that very crime would demonstrate a "conflict of interest . . . would render it unlikely that the defendant would receive a fair trial." We believe the same may be said with respect to the People's right to a fair trial.

The next question is whether an issue of prejudice would appear if the two solicitation counts were severed and the DDA's were to remain on the case with respect to trial of the preceding twenty-four counts. In that situation, we find no reason that either DDA would testify as a witness, and no apparent reason for the jury that tries those counts to learn of the solicitation counts. Nor is it shown that prosecutorial discretion on these counts would be compromised so that Millsap would not receive a fair trial. We also recognize the DDA's' declarations, attesting to the massive amount of time (2,000 hours for McCormick and over 1,500 for Myers) and energy they already have expended on this case, and their lack of any connection or contact with Millsap outside of the case. And, as we have observed, were it possible for a defendant charged with serious crimes to disqualify the prosecutors trying the case from proceeding with the prosecution by threatening them, willful defendants would be handed a powerful weapon to disrupt the course of justice.

The proper solution, we believe, is to tailor the remedy to the needs of the case. (See *People* v. *Merritt, supra,* 19 Cal.App.4th at p. 1578.) Assuming, as we do, that the prosecution intends to proceed with the solicitation counts, two alternatives are presented. One is to sever the solicitation counts, leaving them to be tried by deputies other than the DDA's who are the target victims of the solicitations alleged in those counts. The other is not to sever but to assign the DDA's off the entire case and substitute other prosecutors. Absent unusual circumstances not shown on the record before us, that decision should be made by the prosecutor.

That leaves count 27, which alleges that on or about September 30, 1997 (the same date as alleged in counts 25 and 26) Millsap solicited Caldwell to

murder "John Doe." We were informed at oral argument that this charge is closely related to, and is perhaps part and parcel of, counts 25 and 26. If so, there should be a recusal of the DDA's for this count as well. We leave that issue for further development and resolution in the trial court.

## DISPOSITION

Let a peremptory writ of mandate issue commanding the respondent court to direct that DDA's Kevin J. McCormick and Anthony J. Myers be recused from trying the solicitation charges against petitioner Millsap, now alleged in counts 25 and 26 of the amended information. In all other respects the petition for extraordinary relief is denied.

Hastings, J., and Curry, J., concurred.

Petitioner's application for review by the Supreme Court was denied June 16, 1999.