Opinion
 

 RYLAARSDAM, J.
 

 The elected auditor-controller for the County of Orange, has petitioned to vacate the denial of a motion to recuse the Orange County District Attorney from prosecuting an accusation under Government Code section 3060, seeking to remove him from office. We hold there exists the appearance of a conflict so grave as to render it unlikely petitioner will receive fair treatment during the proceedings and order the motion to recuse be granted. We base this decision on the following facts: (1) The auditor-controller remains in office during the pendency of these proceedings and thus continues to perform the functions of his office in relation to the office of the district attorney, (2) the district attorney and his staff were direct victims of the alleged conduct underlying the accusation, (3) the district attorney’s own conduct may become an issue at trial, (4) the district attorney, as part of a “management council,” acted in an executive capacity for the county, during the time the facts allegedly supporting these charges were being investigated by his office, and (5) there is evidence of an attempt by the district attorney to discourage the county board of supervisors from paying for petitioner’s defense.
 

 Background and Contentions
 

 This case arises from the December 1994, Orange County bankruptcy. Following this fiscal disaster, the Orange County Grand Jury returned an accusation against petitioner, the county’s elected auditor-controller, under Government Code section 3060, alleging he should be removed from office for willful misconduct during the period preceding the county’s financial debacle. The Orange County District Attorney and his staff are prosecuting the accusation which alleges petitioner: (1) failed to “prescribe and exercise a general supervision over the accounting forms and methods of keeping the accounts . . . as required by Government Code Section 26881”; (2) failed to maintain accurate accounts and statistics; (3) approved and facilitated the incurring of excessive Orange County debt; and (4) violated Government Code section 26905 by (a) failing to ascertain whether the county treasurer maintained adequate records and (b) failing to properly audit those records.
 

 Petitioner joined in a motion filed by Orange County Supervisor William Steiner, the subject of a similar, since dismissed, accusation, to recuse the
 
 *1281
 
 district attorney and his entire staff from the prosecution of his case. The motion contended the Orange County District Attorney suffered from the following conflicts of interest: (1) petitioner is likely to call the district attorney and senior members of his staff as witnesses at the trial; (2) there is an “intense personal interest” of the district attorney and his staff in this prosecution; (3) the district attorney and his staff are victims of the alleged misconduct which is the subject of the accusation; (4) the district attorney, immediately following the bankruptcy, became a member of a committee formed to assume the functions of the county’s administrative officer; (5) the district attorney has exhibited a lack of evenhandedness in exercising his prosecutorial authority.
 

 After lengthy hearings, the trial court denied the motion. Petitioner then sought relief in this court. We issued an alternative writ and heard and considered the matter. The relevant facts concerning the alleged conflict are described in our discussion of the legal issues.
 

 Discussion
 

 The Legal Standard for Recusal of a Prosecutor
 

 People
 
 v.
 
 Superior Court (Greer)
 
 (1977) 19 Cal.3d 255 [137 Cal.Rptr. 476, 561 P.2d 1164] approved recusal of a district attorney upon a determination the prosecutor “suffers from a conflict of interest which might prejudice him against the accused and thereby affect, or appear to affect, his ability to impartially perform the discretionary functions of his office.”
 
 (Id.
 
 at p. 269.) Probably in response to this broad standard, the Legislature enacted Penal Code section 1424 in 1980. (Unless otherwise indicated, all further statutory references are to the Penal Code.) Originally, and at the time the trial court ruled on the recusal motion, section 1424 provided, “The motion [to disqualify a district attorney] shall not be granted unless it is shown by the evidence that a conflict of interest exists such as would render it unlikely that the defendant would receive a fair trial.” In 1996, this portion of the statute was amended to read, “The motion may not be granted unless the evidence shows that a conflict of interest exists that would render it unlikely that the defendant would receive a fair trial.” This change is not substantive and does not affect our analysis.
 

 In
 
 People
 
 v.
 
 Conner
 
 (1983) 34 Cal.3d 141 [193 Cal.Rptr. 148, 666 P.2d 5], the seminal case interpreting section 1424, an accused felon assaulted a deputy district attorney during an attempt to escape. The trial court refused to disqualify the office of the district attorney from handling the original felony case but recused the entire office from handling the charges relating
 
 *1282
 
 to the assault and attempted escape. The Supreme Court affirmed, noting that section 1424 prohibits the court from granting the motion to recuse the district attorney unless two conditions are met: (1) there is a conflict of interest; and (2) such conflict “would render it unlikely that the defendant would receive a fair trial.”
 
 Conner
 
 held the first element may consist of either actual or apparent conflict.
 
 (People
 
 v.
 
 Conner, supra,
 
 34 Cal.3d at p. 147.) If such a conflict is found, the court must determine the second issue: “[w]as this conflict so grave as to render it unlikely that defendant will receive fair treatment during all portions of the criminal proceedings?”
 
 (Id.
 
 at p. 148.)
 

 The First Element of Section 1424: Existence of a Conflict
 

 Conner
 
 held the first element of section 1424 “contemplates both ‘actual’ and ‘apparent’ conflict when the presence of either renders it unlikely that defendant will receive a fair trial. Traditionally, conflicts raised in varied contexts have involved both actuality and appearance. [Citations] Further, the legislative history of section 1424 reflects concern about the effects of the elimination of the ‘appearance of conflict’ standard. While it is conceivable that an ‘appearance’ of conflict could signal the existence of an ‘actual’ conflict which, although prejudicial to the defendant, might be extremely difficult to prove, we think that the additional statutory requirement (that a conflict exist such as would render it unlikely that the defendant would receive a fair trial) renders the distinction between ‘actual’ and ‘appearance’ of conflict less crucial.”
 
 (People
 
 v.
 
 Conner, supra,
 
 34 Cal.3d at p. 147.)
 

 Here, the trial court made a number of factual findings and concluded, “the defendants have failed to meet their burden of showing that the district attorney or his office could not exercise its discretionary function in an evenhanded manner.” This was based, inter alia, on findings that there was “a rational basis for the decision [not to dismiss the accusation], and the district attorney has exercised its discretion in this area" and that “[t]his court has had ample opportunity to observe the conduct of the individual prosecutors in this case. They appear to conduct themselves in manners dealing with opposing counsel in the presentation of evidence and briefings as evenhanded and professional advocates.” The court thus found the first element, conflict of interest, was absent. But, it is evident from the quoted statements and the court’s discussion of the issues that the court only considered actual conflict. The court failed to consider whether there is an appearance of conflict.
 

 We have the option to remand the case to the trial court to make a finding on the issue of “appearance” of conflict. However, based on uncontradicted
 
 *1283
 
 evidence discussed below, a finding there is no appearance of conflict would not be supported by the evidence. Also a remand would further delay this already protracted litigation. Code of Civil Procedure section 909 provides, “In all cases where trial by jury is not a matter of right. . . , the reviewing court may make factual determinations ... in addition to those made by the trial court.” We have considered, and discuss below, only uncontradicted evidence from the trial court’s record and have drawn reasonable inferences therefrom. This evidence compels a finding of apparent conflict.
 

 Petitioner remains the county’s auditor-controller while these proceedings are pending and is thus in a position to make decisions which affect the operations of the office of the district attorney. These same considerations led the Orange County Superior Court to disqualify its entire bench. An order of the presiding judge so provided because, “Mr. Lewis is the elected Auditor-Controller for the County of Orange and he and his subordinates are involved in daily decision making which directly affects the Court’s budget and the payment of the Court’s payroll and other obligations.” The presiding judge noted, “These issues of continuing decision making regarding the Court’s operations create the appearance of a conflict that justifies this Court in recusing all the sitting judges of the Court from hearing [s] involving the above named defendants.” The effect of petitioner’s operations on the office of the district attorney is identical to that which concerned the presiding judge of the Orange County Superior Court. A similar appearance of conflict results.
 

 The office of the Orange County District Attorney is also a direct victim of the losses resulting from the county’s bankruptcy, and thus of petitioner’s alleged misconduct, because of resulting drastic cuts in its budget. Within days of the bankruptcy, the district attorney issued a directive to his staff announcing a complete hiring freeze, severe cuts in expenses and cancellation of all nonemergency purchases. A few weeks later, a budget reduction plan was submitted deleting positions in the office and reducing expenses for services and supplies. A freeze on travel and conference expenses was adopted. Subsequently, a $2 million reduction in the budget of the office of the district attorney was announced. This caused the elimination of the enforcement and prosecution of certain ordinances and significant reorganizations of staffing for the prosecution of specified offenses. The district attorney issued a press release stating, “We have consistently been one of the leanest and most efficient prosecutor’s offices in the state, and now we are expected to tighten our belt even further. But, with 10% fewer prosecutors to handle 10% more felony cases, it will be extremely difficult to manage.”
 

 The district attorney and his staff were personally affected by the bankruptcy. Previously promised pay raises were rescinded. The district attorney
 
 *1284
 
 and members of his staff who had invested in the county’s deferred compensation plan faced potential losses. The status of a single deputy district attorney, as a victim of the charged crime was held to be sufficient to disqualify the entire office of the district attorney in
 
 People
 
 v.
 
 Conner, supra,
 
 34 Cal.3d 141.
 

 There is also evidence potentially implicating the district attorney in the alleged misconduct which led to the county’s financial disaster. Over a year before the bankruptcy, petitioner forwarded a report to the board of supervisors. This report contained an audit of the operations of Robert Citron, the county’s treasurer-tax collector, covering the 1991 calendar year. The report noted, inter alia, that Citron had deviated from the limitations prescribed by Government Code sections 53601, 53635, 53637, 53638 and 53651, which specify the types of investments and deposits local agencies, including counties, are authorized to make. Petitioner claims to have supplied the district attorney with a copy of this report, as required by Government Code section 26883. The district attorney denies receiving it, although he acknowledges receipt of Citron’s response to the report. The trial court made a finding the district attorney did not receive the report. However, the issue here is not whether the district attorney received the report. The trial court’s preliminary finding on the pretrial motion would not be binding on a jury if this evidence were introduced at trial on the accusation. The relevant fact is: There is evidence the report was transmitted. We are not at this time deciding whether this evidence is relevant. Nevertheless, we recognize petitioner may attempt to assert that he satisfied his statutory responsibilities by advising the district attorney of statutory violations and the latter failed in his responsibilities. Thus, the jury may be asked to judge both the credibility of the district attorney, as relating to the very conduct which is at issue here, and whether the district attorney himself carried out his responsibilities.
 

 The district attorney also became personally involved in attempts to repair the damage caused by the bankruptcy. Shortly after the county’s dire financial situation became apparent, he was appointed to the “operations management council.” This three-person council became the county executive for a period of time and assumed management responsibilities normally carried out by the county’s chief administrative officer. One of the council’s major functions was to recommend fiscal measures to the board of supervisors in response to the shortfall in the then current budget. After the board of supervisors appointed William Popejoy as the new administrative officer, the district attorney, as a member of the council, met with him on a daily basis. Popejoy almost immediately asked petitioner to resign. The district attorney testified he refrained from participating in discussions concerning such a possible resignation. Nevertheless, the difficulty in separating the district
 
 *1285
 
 attorney’s activities in managing county operations, including the operations of the office held by petitioner, from his contemporaneous prosecutorial investigation, adds to an appearance of a conflict of interest.
 

 Other evidence of the district attorney’s personal involvement concerns a telephone call he made to Donald Saltarelli, a member of the board of supervisors, immediately before the board voted on whether the county would pay for petitioner’s defense in these proceedings. The district attorney testified that shortly before the call, he saw Saltarelli interviewed on a television program dealing with whether the county should pay for the defense of petitioner and Supervisors Steiner and Stanton, against whom similar accusations had been brought. During the interview, Saltarelli stated the proceedings were “civil.” Since Steiner and Stanton would not be participating in the vote, the payments for defense costs would be authorized only if Saltarelli and the two remaining board members voted yes. The district attorney testified he called Saltarelli shortly before the vote and told him the proceedings were criminal, not civil. The record does not disclose whether the district attorney made the call in his capacity as a member of the management council, as district attorney or otherwise. Although he denied the call was an attempt to persuade Saltarelli to vote against the furnishing of a defense for petitioner, a reasonable inference could be drawn that was the district attorney’s intent. We need not here decide whether the district attorney’s statement was a correct statement of law. Nevertheless, the apparent attempt to limit petitioner’s resources to defend himself adds substantial weight to the appearance of a conflict.
 

 We find, on the basis of the foregoing evidence, that there is a strong appearance of conflict. “[T]he circumstances of [this] case evidence a reasonable possibility that the [district attorney’s] office may not exercise its discretionary function in an evenhanded manner.”
 
 (People
 
 v.
 
 Conner, supra,
 
 34 Cal.3d at p. 148.) When dealing with appearances of conflict, we are concerned with public perception. Considering this evidence, there is a serious danger this perception will be adverse to the integrity of Orange County’s justice system.
 

 The. Second Element of Section 1424: the Gravity of the Conflict
 

 A finding there is an apparent conflict does not end our task. Section 1424 and
 
 Conner
 
 indicate mere conflict, actual or apparent, is not sufficient to recuse the district attorney. We must also determine whether “this conflict [is] so grave as to render it unlikely that [petitioner] will receive fair treatment during all portions of the . . . proceedings.”
 
 (People
 
 v.
 
 Conner, supra,
 
 34 Cal.3d at p. 148.) The trial court found otherwise, but since it had
 
 *1286
 
 also found there was no conflict, this second finding provides little aid to our analysis. To the extent the finding is meaningful, we find it is not supported by substantial evidence.
 

 Conner
 
 held it appropriate to disqualify the entire office of the district attorney where one deputy was the victim of a crime being prosecuted.
 
 (People
 
 v.
 
 Conner, supra,
 
 34 Cal.3d at p. 148.) Here we are faced with the victimization of the entire office of the district attorney and the personal victimization of many members of its staff. The conflict here is far more grave than that which confronted the court in
 
 Conner.
 
 When we add the other factors, the petitioner’s continuing role as auditor of county departments, including the district attorney, the potential the district attorney’s own conduct may be called into question at trial, the district attorney’s personal involvement in the management of petitioner’s operations and the district attorney’s apparent attempt to limit petitioner’s resources for a defense, the conflict is grave indeed.
 

 We recognize “[t]he recusal of an entire prosecutorial office is a serious step, imposing a substantial burden on the People, and the Legislature and courts may reasonably insist upon a showing that such a step is necessary to assure a fair trial.”
 
 (People
 
 v.
 
 Hamilton
 
 (1989) 48 Cal.3d 1142, 1156 [259 Cal.Rptr. 701, 774 P.2d 730].) However, we are not here dealing with a single misstep by the prosecutor, such as faced the court in
 
 Hamilton.
 
 There the court affirmed denial of recusal, even though a prosecutor’s representative had engaged in an unauthorized communication with a represented defendant. Here we have the appearance of a personal interest by the district attorney which is more closely analogous to the facts presented in
 
 People
 
 ex rel.
 
 Clancy
 
 v.
 
 Superior Court
 
 (1985) 39 Cal.3d 740 [218 Cal.Rptr. 24, 705 P.2d 347]. There the court recused a prosecuting attorney whose fee was contingent upon the success of the prosecution noting, “When a government attorney has a personal interest in the litigation, the neutrality so essential to the system is violated.”
 
 (Id.
 
 at p. 746.) The district attorney’s apparent personal interest is manifest, not only because his office was a direct victim of the conduct charged in the accusation but also because of his possible personal involvement as previously described.
 

 The second element of section 1424 has been met. The apparent conflict is “so grave as to render it unlikely that [petitioner] will receive fair treatment during all portions of the . . . proceedings.”
 
 (People
 
 v.
 
 Conner, supra,
 
 34 Cal.3d at p. 148.)
 

 Disposition
 

 Let a writ of mandate issue directing the trial court to vacate its order denying the motion to recuse the district attorney and his staff and to enter a
 
 *1287
 
 new order granting the motion. The alternative writ is discharged and this court’s stay order is dissolved.
 

 Crosby, Acting P. J., and Wallin, J., concurred.
 

 The petition of real party in interest for review by the Supreme Court was denied June 18, 1997.