Filed 11/05/20  P. v. Cruz-Antonio CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>ORLANDO CRUZ-ANTONIO,<br><br>  Defendant and Appellant. | G058038<br><br>(Super. Ct. No. 16WF2772)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Michael J. Cassidy, Judge.  Affirmed.

David M. McKinney, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Robin Urbanski and Charles G. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Orlando Cruz-Antonio sexually assaulted four different children during a six-year period. A jury convicted him of 23 felonies including two counts of sexual intercourse with M.A. when she was 10 years old or younger. The court sentenced him to 465-years-to-life in state prison.

On appeal, Cruz-Antonio argues there was insufficient evidence M.A. was 10 years old or younger when he assaulted her. He also argues the court erred in instructing the jury with CALCRIM No. 1190. We disagree and affirm the judgment.

**FACTS**

Cruz-Antonio became M.A.'s godfather when she was two years old. The next year, he and his wife moved into an apartment ("apartment 1") with M.A.'s family. The two families lived in apartment 1 for six years before moving to a new apartment ("apartment 2") when M.A. was nine. While they lived in apartment 1, Cruz-Antonio and his wife had their own bedroom, but in apartment 2 they slept in the living room and he "made a little room . . . with their furniture."[1] He created the "room" by using three free-standing closets and a blanket as a door.

During trial, M.A. testified that she thought of Orlando-Cruz as a father figure and frequently spent time alone with him. He began touching her thighs, hugging her, and holding her hand when no one else was nearby. Eventually, he brought her to his room, locked the door, and took her clothes off. He then opened M.A.'s legs and put his penis inside her vagina. She was not sure how many times this occurred in apartment 1, but she remembered it was more than once. M.A. "vividly" remembered the first time it happened was in apartment 1.

---

[1] He and his wife moved into the master bedroom of apartment 2 when M.A. was in eighth grade.

2

M.A. also described an incident in apartment 1 in which Orlando-Cruz lured her into his room by offering to teach her to play the guitar. However, when she came into the room, he closed the door and had sex with her.

M.A. described another time when she went to sleep with Cruz-Antonio and his wife because she had a nightmare and her mom was working that night. She said Cruz-Antonio initially comforted her, but then he "raped" her the next morning. When asked about this incident on cross-examination, she said she thought this was the first time Cruz-Antonio had sex with her.

When she was 13,[2] M.A. was interviewed by the police. During the interview, she said she was 11 or 12 the first time Cruz-Antonio had sex with her. At trial, however, M.A. testified "probably it wasn't the first time . . . ." She also said she did not remember specific dates or how old she was as to each incident, but she remembered where she was when the incidents happened.

M.A.'s mother testified she began working at night when M.A. was 9; she also testified, however, that she started working at night when M.A. was between the ages of 13 and 16.

The court's instructions to the jury included CALCRIM No. 301 and CALCRIM No. 1190. CALCRIM No. 301 says, "The testimony of only one witness can prove any fact. Before you conclude that the testimony of one witness proves a fact, you should carefully review all the evidence." CALCRIM No. 1190 says, "Conviction of a sexual assault crime may be based on the testimony of a complaining witness alone."

The court's instructions also included CALCRIM No. 220, which states in relevant part: "A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt.

---

[2] M.A. was 17 when she testified during Cruz-Antonio's trial.

Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt."

## DISCUSSION

1.      *Sufficiency of the Evidence for Counts 24 and 25*

In counts 24 and 25, the jury convicted Cruz-Antonio of sexual intercourse with M.A. when she was 10 years of age or younger. He does not contest the finding he had sex with M.A., but he argues there was insufficient evidence she was 10 years of age or younger when the incidents occurred. We disagree.

"In reviewing a challenge to the sufficiency of evidence, the reviewing court must determine from the entire record whether a reasonable trier of fact could have found that the prosecution sustained its burden of proof beyond a reasonable doubt. In making this determination, the reviewing court must consider the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. The test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt." (*People v. Mincey* (1992) 2 Cal.4th 408, 432, fn. omitted.)

"'Substantial evidence' means that evidence which, when viewed in light of the entire record, is of solid probative value, maintains its credibility and inspires confidence that the ultimate fact it addresses has been justly determined." (*People v. Conner* (1983) 34 Cal.3d 141, 149.) Further, if "the proven facts give equal support to two inconsistent inferences, neither is established." (*People v. Brown* (1989) 216 Cal.App.3d 596, 600 (*Brown*).)

The record contains substantial evidence to support the jury's verdicts on counts 24 and 25. M.A. testified two acts of sexual intercourse took place in apartment 1: the "first time" Cruz-Antonio had sex with her, and the incident involving the guitar lesson. It was undisputed M.A. was under the age of 10 the entire time she lived in

4

apartment 1. This evidence was sufficient to support the jury's finding that M.A. was under the age of 10 when the offenses happened.

Citing *People v. Smith* (2005) 135 Cal.App.4th 914, Cruz-Antonio argues M.A.'s statement to the police and the testimony regarding when her mother worked at night support the inference M.R. was over the age of 10 when Cruz-Antonio started having sex with her. That may be true, but that is not the issue here. This is not a "coin flip" case. (*Id.* at p. 927.) A "coin flip" occurs when the evidence equally supports two inconsistent inferences, and the jury cannot resolve the conflict. (*Brown*, *supra*, 216 Cal.App.3d at p. 600 [evidence only established police officer's overhead lights were on and did not establish whether red lights were activated as required for felony evasion].)

That is not the situation here. The jury's verdicts indicate it resolved the evidentiary conflicts against Cruz-Antonio. The jurors heard M.A. acknowledge she had trouble remembering the dates when the different incidents happened, but claim her memory was better concerning where the incidents happened. They also heard her "vividly" recall the first incident happening in apartment 1, as well as the guitar incident happening in apartment 1. Again, it is undisputed M.A.'s family moved out of apartment 1 when she was nine years old. The jury then found Cruz-Antonio guilty of both counts. There was substantial evidence to support the verdicts on counts 24 and 25.

2. *CALCRIM No. 1190*

Cruz-Antonio argues CALCRIM No. 1190 is constitutionally defective because it does not include language requiring that the jury believe the testimony of the complaining witness beyond a reasonable doubt before returning a conviction. He argues this deficiency, combined with CALCRIM No. 301, lowers the burden of proof for the prosecution.[3] We disagree.

---

[3] The Attorney General argues Cruz-Antonio forfeited this issue by not objecting to the instruction during trial. However, we may review "any instruction

5

We review a claim of instructional error de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

In *People v. Gammage* (1992) 2 Cal.4th 693, 701 (*Gammage*), our Supreme Court approved the use of instructions similar to those challenged here by Cruz-Antonio. We are obviously bound by California Supreme Court authority. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Cruz-Antonio acknowledges *Gammage*, but argues that case did not consider whether CALCRIM No. 1190 requires a '"beyond reasonable doubt"' qualifier. Again we disagree. While that issue was not specifically before the court in *Gammage*, the Supreme Court held the CALJIC instructions given there (which are similar to the CALCRIM instructions given here) did not "'dilute[ ] the "beyond a reasonable doubt" standard.'" (*Gammage, supra*, 2 Cal.4th at p. 701.) The Supreme Court concluded in *Gammage*, "[a]lthough no corroboration is required in most prosecutions, . . . trials of sex crimes, which often are a credibility contest between the accused and the accuser, have 'special features which make such an instruction on lack of corroboration most proper.'" (*Id.* at p. 702.) We believe that observation applies equally here.

In any event, there was no instructional error. "[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." (*People v. Burgener* (1986) 41 Cal.3d 505, 538 disapproved on another point by *People v. Reyes* (1998) 19 Cal.4th 743, 756). As noted above, the jury was unequivocally instructed the People's case must be proved beyond a reasonable doubt before it could convict appellant. Nothing in CALCRIM Nos. 301 and 1190 altered that burden. "'We must also assume that the jurors are intelligent persons and capable of understanding and

given . . . if the substantial rights of the defendant were affected thereby." (Pen. Code, § 1259.)

6

correlating all jury instructions which are given.'" (*People v. Yoder* (1979) 100 Cal.App.3d 333, 338.)  Given that context, CALCRIM No. 1190 is not constitutionally defective.

## DISPOSITION

The judgment is affirmed.


GOETHALS, J.

WE CONCUR:


FYBEL, ACTING P. J.


THOMPSON, J.