[No. A085621. First Dist., Div. Four. Apr. 28, 2000.]

THE PEOPLE, Plaintiff and Appellant, v.
LAM CHOI et al., Defendants and Respondents.

**COUNSEL**

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Mark S. Howell and Michael D. O'Reilley, Deputy Attorneys General, for Plaintiff and Appellant.

Dennis P. Riordan; Donald M. Horgan; and Dylan L. Schaffer for Defendants and Respondents.

## OPINION

**HANLON, P. J.**—The People appeal from the trial court's order recusing the entire San Francisco City and County District Attorney's Office from participating in this case. They contend that the trial court abused its discretion and applied an incorrect legal standard in ordering recusal. We affirm.

### FACTUAL BACKGROUND

On November 16, 1996, Cuong Tran was shot to death outside the Pierce Street Annex at 3138 Fillmore Street in San Francisco. That same evening, approximately eight minutes before the Tran shooting, Dennis Natali, an attorney and close personal friend of District Attorney Terence Hallinan, was killed at the corner of Steiner and Post Streets, about a mile away. At the time of his death, Natali had a pager with him that contained the telephone number and pager code of defendant Lam Choi's girlfriend, Vivienne Huynh, who was then living with Choi.

On July 31, 1997, the San Francisco Grand Jury returned an indictment charging Choi, Man Leung Yu, Kwon W. Tse and Reagan Huang with Tran's murder (Pen. Code,[1] § 187.) The indictment further alleged that the defendants committed conspiracy to commit murder (§§ 182.1, 187); conspiracy to commit extortion (§§ 182.1, 518); and conspiracy to commit arson (§§ 182.1, 452, subd. (c)). Defendant Choi was also charged with arson (§ 452, subd. (c)) and with illegal possession of a firearm (§ 12021, subd. (e)). No charges have yet been filed in the Natali case.

In February 1998, defendants moved to recuse the San Francisco District Attorney's Office from prosecuting the case on the ground that a conflict of interest existed based on District Attorney Hallinan's close personal friendship with Natali[2], and his statements to the press that the Tran murder was connected to the Natali case. A hearing on the motion was held before Judge Lee Baxter. Judge Baxter denied the motion, finding that there was no apparent or actual conflict of interest. In making her ruling, she relied on the declaration of Assistant District Attorney Alfred Giannini, who averred that as the prosecutor in this case, he was not reporting to District Attorney Hallinan but to Paul Cummins, assistant in charge of the criminal division and to Richard Iglehart, the chief assistant district attorney.

---

[1]All statutory references are to the Penal Code.
[2]District Attorney Hallinan was a pallbearer at Natali's funeral.

The case was thereafter assigned to Judge Cahill for trial. Jury selection commenced on April 13, 1998. On April 16, 1998, the court heard defendant Tse's motion to dismiss and his request for sanctions, which alleged that the People had withheld certain discovery. The court found that the People committed discovery violations, ordered sanctions and continued the case for several months.

Jury selection again commenced on November 4, 1998. By November 30, 1998, 12 jurors were sworn but alternates remained to be seated. On November 30, 1998, however, defendants moved for a mistrial based on a statement made by District Attorney Hallinan during the previous week. The San Francisco Chronicle reported that day that District Attorney Hallinan continued to believe that the slayings of Tran and Natali were connected. He was quoted as stating, " 'I believe the same people were involved in both of them [the killings of Tran and Natali], but we haven't been able to prove it.' " This statement conflicted with the court's instruction to the jury panel during voir dire that the case was unrelated to the Natali homicide.

Prior to ruling on the defendants' mistrial motion, the court questioned the 12 sworn jurors and six prospective alternate jurors regarding whether they had read the November 30th article. One of the jury members had read the article and was excused for cause. One of the prospective alternative jurors mentioned the article to at least two other potential alternates and was also dismissed for cause. Several of the sworn jurors and prospective alternates saw the headline to the article but did not read it. The court initially denied the motion for a mistrial, indicating that it would entertain a motion for change of venue. On December 2, 1998, the court, however, changed its position, denied the change of venue motion and granted the defense motion for a mistrial over the objection of counsel for defendant Choi. The court found that District Attorney Hallinan's statement to the press contradicted the court's admonition to the jury and prejudiced the defendants' right to a fair trial. The court dismissed the jury panel and indicated that it would impose sanctions on the district attorney's office for the costs of the mistrial.

On December 7, 1998, defendants renewed their motion to recuse the entire district attorney's office. Defendants argued that District Attorney Hallinan's recent comment in the San Francisco Chronicle indicated that he believed that they were involved in Natali's homicide. On December 18, 1998, while the motion was under submission, District Attorney Hallinan approached Judge Cahill in chambers unannounced. Jeffrey Adachi, counsel for defendant Choi, was in chambers on an unrelated matter. District Attorney Hallinan asked Judge Cahill to approve a letter he wished to send to the editor. Judge Cahill, realizing that the letter related to the Tran case, refused

to read it and convened Assistant District Attorney Giannini and Adachi to put the matter on the record. Adachi requested that the recusal motion be reopened so that the court could consider the letter as additional evidence of District Attorney Hallinan's "intense, emotional involvement" in the Tran case. Giannini explained that District Attorney Hallinan was simply seeking the court's permission to communicate with the press because of the gag order in effect and that the letter was "neutral." He at no point requested an opportunity to reargue the recusal motion in light of the new evidence.[3] The court deferred a ruling on whether additional briefing on the recusal motion would be required.

On December 21, 1998, the court recused District Attorney Hallinan and the entire San Francisco District Attorney's Office, finding that District Attorney Hallinan's loss of Natali, his close friend, had "adversely [a]ffected him in such a way that the [defendants'] right to a fair trial is endangered." Relying on *People v. Lepe* (1985) 164 Cal.App.3d 685 [211 Cal.Rptr. 432], the court determined that the entire San Francisco District Attorney's Office must be recused because the office "could not be so sanitized . . . such [as] to assume that the deputy who prosecutes the case from which his boss is recused would not be influenced by the very considerations that bar the District Attorney himself from participation in the case."

## DISCUSSION

■ Section 1424, subdivision (a)(1) provides that a motion to recuse a district attorney "may not be granted unless the evidence shows that a conflict of interest exists that would render it unlikely that the defendant would receive a fair trial." "[A] 'conflict,' within the meaning of section 1424, exists whenever the circumstances of a case evidence a reasonable possibility that the DA's office may not exercise its discretionary function in an evenhanded manner." (*People v. Conner* (1983) 34 Cal.3d 141, 148 [193 Cal.Rptr. 148, 666 P.2d 5].) The conflict is disabling under section 1424 only when it is "so grave as to render it unlikely that [the] defendant will receive fair treatment during all portions of the criminal proceedings."

---

[3]For the first time at oral argument, the People argued that the trial court denied them procedural due process because it failed to provide them with an opportunity to be heard on the new evidence. We permitted the parties to brief this issue following oral argument. We conclude that the People waived the issue. The record demonstrates that the People did not seek an opportunity to brief the issue in the trial court, nor did they move for reconsideration of the trial court's recusal order following its issuance several days after District Attorney Hallinan's ex parte contact. In failing to raise the issue in the trial court, the People waived any objection they may have had to the court's procedure. Having failed to raise the issue in the trial court, they are barred from raising it for the first time on appeal. (*Jansen Associates, Inc. v. Codercard, Inc.* (1990) 218 Cal.App.3d 1166, 1170 [267 Cal.Rptr. 516]; see also 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 394, pp. 444-446.)

(*Conner, supra*, 34 Cal.3d at p. 148) Thus, the *Conner* court sets forth a two-part test for determining whether recusal is required: (1) is there a conflict of interest and (2) is the conflict so severe as to disqualify the district attorney from acting? (*Ibid.*; *People v. Eubanks* (1996) 14 Cal.4th 580, 594 [59 Cal.Rptr.2d 200, 927 P.2d 310].)

On appeal, we review the court's factual determinations on the recusal motion under the substantial evidence test. (*Millsap v. Superior Court* (1999) 70 Cal.App.4th 196, 200 [82 Cal.Rptr.2d 733].) Once the pertinent factual issues are settled, our role is to determine whether the trial court abused its discretion in granting the motion. (*Ibid.*)

■ The People contend that the evidence does not support a finding that a conflict of interest existed within the district attorney's office. They argue that District Attorney Hallinan's ex parte contact regarding the letter to the editor is insubstantial to support the court's order to excuse the entire district attorney's office. We conclude, however, that the ex parte incident, when considered with the circumstances of District Attorney Hallinan's prior actions regarding this case, is sufficient to sustain the trial court's recusal order.

The record shows that although at the inception of this case, the district attorney's office set up an "ethical wall" to bar District Attorney Hallinan from having any involvement in the case, that wall failed to prevent District Attorney Hallinan from discussing the case with the press. In the process, defendants' right to a fair trial was prejudiced. Indeed, the court was required to grant a mistrial on December 2, 1998, after District Attorney Hallinan was quoted in the San Francisco Chronicle as saying that the same people were involved in both the Tran and Natali shootings, a statement that contradicted the court's express instruction to the jury. District Attorney Hallinan nevertheless persisted in talking with the press. After the mistrial, he was quoted in the San Francisco Examiner on December 3, 1998, regarding his feelings about the mistrial, his concerns about the case and the possibility of sanctions against the district attorney's office as a result of the mistrial. On December 4, 1998, counsel for District Attorney Hallinan and the district attorney's office on the sanctions issue, agreed to an informal gag order on this case. After entry of that order, District Attorney Hallinan approached the court ex parte with a proposed letter to the editor on the case because he was "being bashed in the press." As the court justifiably found, this latter circumstance in itself demonstrated that District Attorney Hallinan's deep emotional involvement which stemmed from the loss of his close friend, Natali, prevented him from exercising the discretionary functions of

his office in an evenhanded manner.[4] While the court relied on the ex parte contact as tilting the balance in favor of granting the recusal order, this factor in combination with the totality of the circumstances of District Attorney Hallinan's conduct provides substantial evidence of the existence of a conflict of interest.

The People argue that even if the evidence supported the court's finding of a conflict of interest, that conflict was not so grave as to require recusal of the entire district attorney's office. While the trial court's order did not explicitly state the factors it relied upon in finding that the defendants could not receive a fair trial, the record supports the court's implied finding that the conflict was so grave as to render a fair trial unlikely. (See *People v. Eubanks, supra,* 14 Cal.4th at pp. 598-599 [appellate court can assess whether conflict was disabling where trial court failed to apply complete test under § 1424].)

In *People v. Connor, supra,* 34 Cal.3d 141, the court upheld the trial court's recusal of an entire district attorney's office. There, recusal was ordered because Braughton, a deputy district attorney, was a witness and a potential victim of the criminal conduct that gave rise to the offenses for which the defendant was being prosecuted. (*Id.* at pp. 144, 148.) Braughton was in court when he heard loud noises coming from a jury room. He ran to the room and found the defendant holding a revolver; a deputy sheriff was bent over in front of him. The defendant saw Braughton and aimed his gun at him. Braughton ran from the room as the defendant fired the gun; he was not shot. It was later determined that the sheriff had been stabbed and shot. (*Id.* at p. 144.) The court concluded that substantial evidence supported the court's finding of a conflict of interest given "the dramatic and gripping nature of the circumstances, the pervasiveness of the communications [within the office] regarding Braughton's relationship to the incident, and the difficulty in gauging their cumulative effect." (*Id.* at p. 148.)

Here, too, it is also difficult to gauge the cumulative effect of District Attorney Hallinan's personal loss of Natali, his belief that the shooting of Natali was connected to that of Tran and the effect of his relationship with Natali and the ensuing prosecution of defendants on the other deputies in the office. As in *Conner,* while it may be impossible to prove a bias in the district attorney's office will affect the fairness of a trial, "the trial court is in a better position than are we to assess the likely effect of the shooting

---

[4]As the trial court recognized, District Attorney Hallinan's conduct in this regard violated the Rules of Professional Conduct, rule 5-300, prohibiting ex parte contact with a judge regarding a pending contested matter without the consent of all other counsel in the case.

incident. We will not disturb the court's conclusion that the DA's discretionary powers exercised either before or after trial (e.g., plea bargaining or sentencing recommendations), consciously or unconsciously, could be adversely affected to a degree rendering it unlikely that defendant[s] would receive a fair trial." (*People v. Conner, supra,* 34 Cal.3d at p. 149.)

As defense counsel argued below, deputy district attorneys serve at the will of the district attorney. The trial court recognized the potential bias that might result from the fact that deputies are hired, evaluated and promoted by the district attorney when it ordered the recusal of the entire office. (See *People v. Lepe, supra,* 164 Cal.App.3d at p. 689 [court affirmed recusal order disqualifying entire district attorney's office recognizing that the same considerations that bar the district attorney from participating in case could also influence deputies who serve at his will].) Moreover, District Attorney Hallinan's inability to divorce himself from this case demonstrates that the conflict was so grave that it was unlikely the defendants would obtain a fair trial. District Attorney Hallinan was in effect serving two masters—attempting to seek justice for the death of Natali while prosecuting defendants on unrelated crimes. "A public prosecutor must not be in a position of 'attempting at once to serve two masters,' the People at large and a private person or entity with its own particular interests in the prosecution. (*Ganger* v. *Peyton* (4th Cir. 1967) 379 F.2d 709, 714.) Private influence, exercised through control over the prosecutor's personal *or* institutional concerns, is a conflict of interest, under section 1424, if it creates a reasonable possibility the prosecutor may not act in an evenhanded manner." (*People v. Eubanks, supra,* 14 Cal.4th at p. 596, fn. omitted.)

Finally, the People argue that the ethical wall between District Attorney Hallinan and the prosecuting attorneys in this case adequately addressed any concerns regarding a conflict of interest. Here, again, the record belies this argument. While Assistant District Attorney Giannini declared that he was not reporting to District Attorney Hallinan on this case, the record discloses that he was nonetheless aware that District Attorney Hallinan proposed to send a letter to the editor about the case. When the court sought to put the facts concerning District Attorney Hallinan's ex parte proffer of the letter on the record, Giannini stated that while he did not know that District Attorney Hallinan was going to approach the court, he was aware that "there would be an effort to get the court to lift its order with respect to a letter to the editor." It is thus clear that the ethical wall in the district attorney's office did not prevent District Attorney Hallinan from communicating about the case to others within the office. Given these circumstances, the trial court did not abuse its discretion in ordering recusal.

## DISPOSITION

The order is affirmed.

Poché, J., and Sepulveda, J., concurred.

A petition for a rehearing was denied May 30, 2000.