Filed 06/18/21 (unmodified opn. attached)  Received for posting 6/25/21
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CHRISTOPHER SCHUMB, | H048532 |
| | (Santa Clara County |
| Petitioner, | Super. Ct. No. C2010724) |
| | |
| v. | ORDER MODIFYING OPINION |
| | AND DENYING REHEARING |
| THE SUPERIOR COURT OF SANTA | [NO CHANGE IN JUDGMENT] |
| CLARA COUNTY, | |
| | |
| Respondent; | |
| | |
| THE PEOPLE, | |
| | |
| Real Party in Interest. | |

BY THE COURT:

It is ordered that the opinion filed herein on May 28, 2021 be modified as follows.

On page 15, the final sentence of the opinion is deleted and replaced with the following:

Upon issuance of the remittitur, the temporary stay order is vacated.

There is no change in the judgment.

The petition for rehearing is denied.

_____

ELIA, A.P.J.

_____

GROVER, J.

_____

WISEMAN, J.[*]

**H048532 -** *Schumb v Superior Court*

---

[*]Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 5/28/21 (unmodified version)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CHRISTOPHER SCHUMB, Petitioner, v. THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent; THE PEOPLE, Real Party in Interest. | H048532 (Santa Clara County Super. Ct. No. C2010724) |

Petitioner Christopher Schumb is charged as a coconspirator in a felony indictment alleging a quid pro quo scheme in which members of the Santa Clara County Sheriff's Department issued hard-to-obtain concealed firearms permits in exchange for substantial monetary donations to help the reelection campaign of Santa Clara County Sheriff Laurie Smith. Schumb is an attorney with a history of fundraising for elected officials; he accepted the donations at issue in the underlying criminal case in his capacity as a treasurer of an independent expenditure committee supporting Sheriff Smith's reelection. Schumb is a friend of Jeff Rosen, the elected Santa Clara County District Attorney. Schumb has also raised funds for Rosen's campaigns in the past.

Schumb moved to disqualify the Santa Clara County District Attorney's Office from prosecuting him, arguing that his friendship with both Rosen and Rosen's chief assistant, Jay Boyarsky, created a conflict of interest making it unlikely Schumb would

receive a fair trial. The motion was denied, and he now seeks writ relief here. Schumb contends the motion should have been granted because his relationships with Rosen and Boyarsky are of the same type as his alleged relationships with members of the Sheriff's Department (i.e., as a fundraiser for public officials' reelection campaigns); Schumb intends to call Rosen and Boyarsky as both fact and character witnesses at trial; and despite their personal connections to the case, neither Rosen nor Boyarsky made any effort to create an ethical wall between themselves and the attorneys prosecuting the case.

For the reasons stated here, we agree with Schumb and will issue a peremptory writ of mandate directing the respondent court to vacate the existing order and enter a new order disqualifying the Santa Clara County District Attorney's Office in the underlying criminal proceeding against Schumb.

## I. TRIAL COURT PROCEEDINGS

### A. INDICTMENT ALLEGATIONS

Schumb is charged by indictment with two felony counts: conspiring to bribe an executive officer (Pen. Code, §§ 182, 67), and bribing an executive officer (Pen. Code, § 67). Schumb's alleged coconspirators are James Jensen (a sheriff's department captain), Harpaul Nahal (a private attorney), and Michael Nichols (a local gun parts manufacturer). Unindicted coconspirators include three men affiliated with a private executive security company called AS Solution, Inc., among them Martin Nielsen and the company's CEO, Christian West. The following factual summary is based on the overt acts alleged in the indictment.

AS Solution provides contract security services for corporate executives. The company wanted to secure local licenses to carry concealed weapons (CCW licenses), which are difficult to obtain. Nielsen contacted Nichols about the CCW issue in spring 2018. Nielsen and West then had lunch with Nichols, Nahal, and Schumb. At that lunch Schumb described his fundraising efforts for the reelection of Santa Clara County Sheriff Laurie Smith, and he encouraged Nielsen to attend a SWAT competition where Nielsen

2

could meet Jensen. Nielsen attended the competition and was introduced to Jensen by Nichols. The indictment alleges Nielsen and Jensen agreed at that time to the core conspiracy: "AS Solution's executive protection agents would receive CCW licenses issued by the Sheriff in exchange for a donation from the company."

Nielsen met with Jensen, Nahal, and Nichols in May 2018. They reached an agreement that AS Solution would receive 10 to 12 CCW licenses in return for a $90,000 donation to support Sheriff Smith's reelection. Jensen instructed Nielsen to have his agents use false employer names and positions on their CCW license applications. Nielsen delivered the completed applications to Jensen in summer 2018 and sent West a text message confirming their submittal, stating " 'Chris Schaum [sic] will reach out to me soon about financial part.' " Jensen met with Schumb at Schumb's office in fall 2018. Jensen then instructed Nielsen that the first part of the donation would be $45,000 for a $5,000-per-plate fundraiser for the Sheriff's campaign. Nielsen moved money from AS Solution into his personal checking account, and delivered a check to Schumb in October 2018 payable to the " 'Santa Clara County Safety Alliance.' " Schumb was a treasurer of an independent expenditure committee with a substantially similar title (the Santa Clara County Public Safety Alliance), whose purpose was to support Sheriff Smith's reelection campaign.

Nielsen complained to Schumb in early 2019 that AS Solution had not yet received any CCW licenses. Schumb called Jensen. Less than a month later Jensen signed shooting range qualification paperwork for Nielsen's CCW license. Nielsen obtained his CCW license in spring 2019, signed by Sheriff Smith.

Based on the foregoing, the grand jury returned the operative indictment against Schumb, Jensen, Nahal, and Nichols. The indictment was filed in the superior court in August 2020. In a press release announcing the indictment, District Attorney Rosen was quoted as follows: " 'CCW licenses should not be given out in exchange for campaign donations. They should not be for sale.' "

### B. Motion to Disqualify the District Attorney's Office

Schumb moved to disqualify the entire Santa Clara County District Attorney's Office from prosecuting his case, arguing that his relationships with both Rosen and Rosen's chief assistant Boyarsky posed a conflict of interest that rendered it unlikely he would receive a fair trial.[1] In a supporting declaration, Schumb related that Boyarsky introduced him to Rosen in 2010 just after Rosen was elected district attorney. Schumb characterized his relationship with Rosen as that of a "political consultant, lawyer, fundraiser, and friend." Schumb also stated that he is a close friend of Boyarsky and his wife. Both Boyarsky and Rosen attended fundraising events over the years as Schumb's guests. Schumb declared that Boyarsky had sought his help to mediate Rosen's dispute with Sheriff Smith's office regarding access to recordings of jail inmate phone calls. He attached to the declaration an email Boyarsky had forwarded to him about the jail call dispute.

Schumb stated he had exchanged over 200 emails with Rosen since 2010, and attached several representative emails to the declaration. Most involved helping Rosen with campaign fundraising efforts, in one enlisting Schumb's help to plan a fundraiser for then-Attorney General Kamala Harris's campaign for the U.S. Senate. Two email chains involved requests by Rosen not associated with fundraising: one seeking help to fix a vintage watch, and another seeking help to find tickets to purchase for a sold out concert.

Also attached in support of the motion to disqualify was a section from the Santa Clara County District Attorney's Office Policy and Procedure Manual, stating that an "attorney or staff member of the District Attorney's office shall *not* handle any case where either the victim/complainant or the defendant is a friend or relative." The manual

---

[1] Codefendant Jensen joined in the motion, and separately argued that a leak of grand jury transcripts to the press provided an independent basis to disqualify the district attorney's office. Jensen filed a separate petition in this court (case No. H048548) to challenge the trial court's denial of his motion, which we address in a separate opinion filed today.

instructs that an attorney must notify the chief assistant district attorney in writing upon discovering that a victim or defendant is a friend, and that the attorney "should not thereafter read the file, or review the case." We note that Boyarsky is the chief assistant district attorney.

The Attorney General opposed Schumb's motion, attaching supporting declarations from Rosen and John Chase, the deputy district attorney in charge of the underlying prosecution. Rosen declared that after he was elected district attorney in 2010, Schumb "became a political supporter, helped raise money for my subsequent re-election campaigns, and gave me political advice." Rosen denied that Schumb ever acted as his attorney, and he stated that Schumb's assistance amounted to only two percent of the money Rosen has raised for his reelection campaigns. Rosen stated he learned about Schumb's alleged involvement in the conspiracy in July 2019, and that he instructed his campaign staff to return all direct contributions Schumb had made to Rosen's campaigns.

Chase is the lead prosecutor in the Public Integrity Unit of the Santa Clara County District Attorney's Office. He declared that he started investigating the conspiracy in December 2018 when Rosen forwarded a tip from a local newspaper publisher about a $45,000 donation to the Santa Clara County Public Safety Alliance independent expenditure committee. Chase declared he met with Rosen and Boyarsky about the case every two to three months in 2019, including four times that July. He met with Rosen and Boyarsky periodically in 2020 as well, including nine meetings in July and August "concerning the grand jury proceedings, charging decisions, and media releases." Chase denied that Rosen or Boyarsky directed him to focus his investigation on any particular individual. Chase stated that he and his team "followed the evidence where it led without any influence or pressure from anyone." He acknowledged that he was aware Schumb was a treasurer of the independent expenditure committee "from the very beginning," but that he did not discover evidence implicating Schumb in the conspiracy until July 2019.

5

At the hearing on the motion to disqualify, an email and an attached memo were admitted as court exhibits. The email was from Rosen's private email address, asking what Schumb thought about an attached internal district attorney's office memo regarding a crime possibly committed by a government official. (The exhibits were filed under seal in both the trial court and this court because the official mentioned in the memo was never charged with a crime.) Schumb's counsel argued the email showed that Rosen sought advice from Schumb, and it demonstrated the closeness of their relationship.

Schumb's counsel also asserted at the hearing that he had been prevented from fully investigating the extent of Rosen's involvement in the case. Counsel stated he subpoenaed all correspondence related to the case between Rosen, Boyarsky, and Chase, but they objected on the basis of attorney work product and refused to turn over any documents. Counsel argued that the extent of Rosen's involvement could not be determined "unless we put [Rosen] on the stand and have him testify as to everything that he shared with Mr. Chase." Ruling from the bench, the trial court denied the motion without an evidentiary hearing. The trial court ruled that although there was "certainly evidence to show a friendship," the evidence was insufficient to show a conflict of interest or that Schumb "has or likely would not receive fair treatment during all portions of the proceedings."

Schumb petitioned for a writ of mandate or prohibition in this court, arguing the trial court abused its discretion in denying the disqualification motion. We granted his request to stay the trial and issued an order to show cause. The Attorney General opposed the stay and the petition. The Santa Clara County District Attorney's Office has not filed pleadings on its own behalf.

## II. DISCUSSION

Penal Code section 1424 governs disqualification of a prosecutor: a disqualification motion "may not be granted unless the evidence shows that a conflict of

6

interest exists that would render it unlikely that the defendant would receive a fair trial." (Pen. Code, § 1424, subd. (a)(1); hereafter section 1424.)  The test for disqualification has two parts:  (1) whether there is a conflict; and (2) whether that conflict is so grave as to render it unlikely that the defendant will receive fair treatment during all portions of the criminal proceedings.  (*People v. Eubanks* (1996) 14 Cal.4th 580, 592 (*Eubanks*).) We review the trial court's ultimate decision on disqualification under the deferential abuse of discretion standard.  (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.) We review any factual findings underlying the trial court's decision for substantial evidence.  (*Ibid.*)

## A. THE TRIAL COURT ERRED BY FINDING NO CONFLICT EXISTS

A conflict under the first part of section 1424 "exists whenever the circumstances of a case evidence a reasonable possibility that the DA's office may not exercise its discretionary function in an evenhanded manner.  Thus, there is no need to determine whether a conflict is 'actual,' or only gives an 'appearance' of conflict." (*People v. Conner* (1983) 34 Cal.3d 141, 148; accord *People v. Cannedy* (2009) 176 Cal.App.4th 1474, 1479–1480 (*Cannedy*).)

The relevant facts are undisputed, and the parties agree that substantial evidence supports the trial court's finding that Rosen and Schumb are friends.  Rosen is the elected Santa Clara County District Attorney.  Boyarsky is Rosen's chief assistant.  Schumb has known Rosen since 2010 or 2011.  Rosen acknowledged in his declaration that Schumb was a "political supporter, helped raise money for my subsequent re-election campaigns, and gave me political advice."  That support included hosting fundraising events and engaging in networking on Rosen's behalf.  Schumb and Rosen exchanged hundreds of emails over the years, and in them Rosen often expressed his appreciation for Schumb's help.  Rosen occasionally sought Schumb's help with non-election-related activities, and shared an internal district attorney's office memo with Schumb to solicit his opinion. Both Boyarsky and Rosen have attended fundraising events as Schumb's guests.  And

7

Boyarsky asked for Schumb's help in mediating a dispute between Rosen and Sheriff Smith about access to inmate phone recordings.

The charges against Schumb relate to his fundraising for the reelection campaign of a high-ranking local official, Sheriff Smith. Schumb intends to call both Rosen and Boyarsky as defense witnesses at trial. Rosen was aware of the investigation from its inception, as he is the person who forwarded to Deputy District Attorney Chase the tip leading to Schumb's prosecution. According to Chase's declaration, he reported to Rosen in July 2019 that he had received information linking Schumb to the alleged conspiracy. Although in August 2019 Rosen returned all contributions Schumb had made to his reelection campaigns, nothing in the record suggests Rosen and Boyarsky attempted to wall themselves off from Chase's investigation. Chase declared that neither Rosen nor Boyarsky directed him to focus his investigation on any particular individual. But Chase also confirmed that he met with Rosen and Boyarsky every two to three months in 2019 and periodically in 2020, including nine meetings in July and August 2020 "concerning the grand jury proceedings, charging decisions, and media releases." Rosen was quoted in the press release that announced the indictment of Schumb and the other defendants.

The foregoing facts satisfy the first part of the section 1424 analysis, demonstrating the existence of a conflict. Schumb is a friend of both the elected District Attorney Rosen, and his chief assistant Boyarsky. And the nature of those friendships parallels Schumb's relationship with Sheriff Smith, the elected official for whom the indictment alleges he conspired to collect a bribe. Given the factual underpinnings and intersection of those relationships, we conclude as a matter of law that there is a reasonable possibility that Rosen's office may not exercise its discretionary function in an evenhanded manner. (See *Dean v. Dean* (1963) 59 Cal.2d 655, 657 ["[A]n appellate court will not interfere with the trial court's action unless, as a matter of law, an abuse of

8

discretion is shown."].)  The trial court therefore abused its discretion when it found that no conflict exists.

## B.  THE TRIAL COURT ERRED BY NOT DISQUALIFYING THE DISTRICT ATTORNEY'S OFFICE FROM PROSECUTING SCHUMB

The second and critical question is whether the conflict Schumb identifies is " 'so grave as to render it unlikely that defendant will receive fair treatment during all portions of the criminal proceedings.' " (*Eubanks*, *supra*, 14 Cal.4th at p. 592.)  To that end, a court "must consider the entire complex of facts surrounding the conflict to determine whether the conflict makes fair and impartial treatment of the defendant unlikely." (*Id.* at p. 599.)  We are mindful that disqualification under section 1424 cannot be ordered "merely because the district attorney's further participation in the prosecution would be unseemly, would *appear* improper, or would tend to reduce public confidence in the impartiality and integrity of the criminal justice system." (*Id.* at p. 592.)  And the "threshold necessary for recusing an entire office is higher than that for an individual prosecutor." (*Cannedy*, *supra*, 176 Cal.App.4th at p. 1481.)  "If a defendant seeks to recuse an entire office, the record must demonstrate 'that the conduct of any deputy district attorney assigned to the case, or of the office as a whole, would likely be influenced by the personal interest of the district attorney or an employee.' " (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 373.)

After considering the moving papers and supporting declarations, the trial court stated its view that "there is sufficient evidence before the court to rule on this issue without the need [for] an evidentiary hearing."  In the first of the two-part analysis under section 1424, the trial court found no conflict.  It nonetheless went on to address the second part of the analysis, namely the gravity of the conflict asserted by Schumb.  (Cf. *Eubanks*, *supra*, 14 Cal.4th at p. 598 [trial court's reasoning "directed solely at the first portion of the two-part test"].)  The trial court stated in its ruling that, "I don't believe there's evidence before the Court currently that shows that Mr. Schumb has or likely

9

would not receive fair treatment during all portions of the proceedings." We therefore consider whether the trial court abused its discretion in so finding.

The factual basis for Schumb's prosecution is that he committed illegal acts (conspiring to bribe a public official) while engaged in otherwise-legal activities (raising campaign funds to support the reelection of that same elected official, Sheriff Smith). Schumb has also raised funds extensively for District Attorney Rosen's reelection campaigns and, according to Schumb's declaration, he has been called upon to intervene in a professional dispute between those very officials, Rosen and Sheriff Smith. The parties do not dispute that Schumb's relationship with Rosen was fairly close, with Rosen even asking for Schumb's opinion about alleged criminal activity by a government official. Rosen does not deny his relationship with Schumb, but has nonetheless remained involved in the case. It also appears that Rosen and Boyarsky will be called by Schumb to testify at trial, as both character witnesses *and* fact witnesses (about his fundraising efforts for local politicians).

The foregoing facts create a strong incentive for Rosen's office to aggressively prosecute Schumb for two purposes, both to distance Rosen from any taint associated with reelection money raised by Schumb, and to avoid the appearance of favoritism toward a friend and campaign contributor. On these facts, it is unlikely that Schumb would receive fair and impartial treatment if he is prosecuted by the Santa Clara County District Attorney's Office.

We respect that the threshold to disqualify an entire office is higher than that for an individual prosecutor, but nonetheless conclude that office-wide disqualification is required here. Significantly, the conflict involves Schumb's friendship with the elected district attorney rather than with a line deputy or other staff member. And despite that conflict, Rosen and his chief assistant Boyarsky made absolutely no effort to create an ethical wall between them and the prosecuting deputies after learning Schumb was a suspect. To the contrary, Chase acknowledges in his declaration that he met with Rosen

10

and Boyarsky throughout his investigation, including meetings "concerning the grand jury proceedings, charging decisions, and media releases." Rosen's and Boyarsky's continued involvement violates their office's policy and procedure manual, which proscribes involvement in any case where the defendant is a friend. The manual directs that upon discovering such a conflict, the attorney "should not thereafter read the file, or review the case." Even assuming that an ethical wall could have earlier been established to separate the prosecuting deputies from Rosen and Boyarsky, the case has progressed too far at this point for that to be a realistic remedy. (See *In re Charlisse C.* (2008) 45 Cal.4th 145, 163 (*Charlisse C.*) [noting decisions that "where the attorney with the actual conflict has managerial, supervisorial, and/or policymaking responsibilities in a public law office, screening may not be sufficient to avoid vicarious disqualification of the entire office."].)

Both parties cite *People v. Choi* (2000) 80 Cal.App.4th 476 (*Choi*) but disagree about its relevance. In *Choi*, a man named Tran was shot and killed in San Francisco less than ten minutes before and about one mile away from where another man, Natali, was shot and killed. (*Id.* at p. 478.) Natali was a close personal friend of then-San Francisco District Attorney Terence Hallinan. Choi was arrested for Tran's murder, and the phone number of Choi's girlfriend was found on Natali's pager. Hallinan believed Choi was also responsible for Natali's murder, and made that belief known to the press. Choi moved to disqualify the district attorney's office from prosecuting him for Tran's murder, based on Hallinan's relationship with Natali and Hallinan's public statements that the killings were related. The trial court denied the motion, but later granted a mistrial after Hallinan continued to speak to the press about the alleged connection between the homicides, directly contradicting the court's voir dire instruction to the jury panel that the crimes were unrelated. (*Id.* at p. 479.) Choi renewed his motion to disqualify the district attorney's office in light of Hallinan's statements to the press. While the renewed motion was under submission, Hallinan approached the trial judge ex parte seeking approval of a

11

letter to the editor he wished to send about the case. The trial court ultimately granted the renewed motion to disqualify the entire district attorney's office, a decision affirmed by the Court of Appeal. (*Id.* at p. 480.) The *Choi* court reasoned that Hallinan had a clear conflict of interest, and that disqualifying the entire office was appropriate to combat the "potential bias that might result from the fact that [prosecuting] deputies are hired, evaluated and promoted by the District Attorney." (*Id.* at p. 483.) Importantly, the *Choi* court affirmed disqualification of the entire office even though the office had attempted to wall off Hallinan from the prosecuting deputies. The court explained that based on the facts of the case it was "clear that the ethical wall in the district attorney's office did not prevent District Attorney Hallinan from communicating about the case to others within the office." (*Ibid.*)

Rosen's connection to Schumb's case is different from that in *Choi*, and arguably more direct. Rosen's relationship is with the *defendant* in the very case being prosecuted, rather than with the victim in a separate case. And despite that connection, neither Rosen nor Boyarsky observed an ethical wall to prevent the conflict from tainting the prosecution. Here, just as in *Choi*, disqualifying the entire district attorney's office is appropriate to prevent any bias that could result from the fact that Chase and the other prosecuting deputies are ultimately hired, evaluated, and promoted by Rosen. (*Choi*, *supra*, 80 Cal.App.4th at p. 483.)

The Attorney General raises several issues in isolation, and urges us not to announce any bright-line rules. Standing alone, any of the discrete facts identified by the Attorney General might not necessitate office-wide disqualification: an elected district attorney's friendship with a defendant; that an elected district attorney will be called as a witness at trial; and that an elected district attorney failed to follow his or her own office's policy requiring distance from any case involving a friend. But in this case we have not only all of those individual factors, but also the fundraising and other factors we have already discussed. Far from announcing any bright-line rule, our decision is simply

12

a recognition that the entire complex of facts here makes Schumb's fair and impartial treatment by the Santa Clara County District Attorney's Office unlikely. (*Hambarian v Superior Court* (2002) 27 Cal.4th 826, 834.)

The Attorney General argues Schumb has "pointed to nothing that would suggest that Chase would not act fairly in conducting the trial were Rosen to be called as a defense witness," and contends that, if anything, Rosen's friendship with Schumb would inure to Schumb's benefit because Chase might pull his punches when cross-examining Rosen. But as we have noted, Rosen has an equally strong incentive to see that Schumb is aggressively prosecuted. Without disqualification, Rosen would have firing authority over the attorney who will be cross-examining him. That creates an unreasonable risk that Chase would steer the cross-examination to serve Rosen's interest potentially compromising Schumb's right to a fair trial. (See *People v. Lepe* (1985) 164 Cal.App.3d 685, 689 ["As the deputies are hired by [the district attorney], evaluated by [him], promoted by [him] and fired by [him], we cannot say the office can be sanitized such to assume the deputy who prosecutes the case will not be influenced by the considerations that bar [the district attorney] himself from participation in the case."]; quoted with approval in *Charlisse C.*, *supra*, 45 Cal.4th at p. 164.)

The Attorney General contends disqualification is not necessary because the "uncontested declarations established that while Rosen met with Chase about the progress of the case, he did not direct, influence, or pressure Chase to make any particular discretionary decisions that would be unfair to petitioner." There are two problems with that argument. First, Schumb was prevented from gathering evidence to contest the declarations due to the assertion of attorney work product objections to his subpoena for case-related correspondence between Rosen, Boyarsky, and Chase. The Attorney General also insisted in the trial court that it was not necessary to conduct an evidentiary hearing (during which Schumb's counsel could have questioned Chase and Rosen about their declarations). Second, the standard for disqualification does not require evidence

13

that Rosen actually directed, influenced, or pressured Chase.  Schumb need show only that he is unlikely to receive a fair trial, a standard we have already concluded he satisfied.

The Attorney General asserts that Rosen's continued involvement in the case, including making statements to the press, "is to be expected, regardless of the identity of the charged defendant," because this is a high-profile public corruption case.  Though that may be accurate when an elected district attorney has no connection to a case, when a conflict exists of the nature present here, the district attorney must ensure that he or she takes no part in the prosecution.

Finally, the Attorney General complains that Schumb presents inconsistent theories about how he will be treated unfairly if the district attorney's office is not disqualified:  "Is petitioner being prosecuted to 'punish both Schumb and Sheriff Smith' [citation] or is petitioner being prosecuted because he is such a good friend that to not prosecute him would leave Rosen open to favoritism accusations?"  The Attorney General argues that the "fact that petitioner can allege both theories on the same evidence demonstrates the speculative nature of his claims and the insufficient basis for recusal."  But Schumb's motion is not based on mere speculation, and it does not fail merely because it advances two plausible reasons that he is unlikely to receive fair treatment if the district attorney's office is not disqualified.

We conclude the trial court erred by not disqualifying the Santa Clara County District Attorney's Office from prosecuting Schumb in this action.  His prosecution must therefore be severed from that of his codefendants.

### III.   DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its September 17, 2020 order denying petitioner Christopher Schumb's motion to disqualify the Santa Clara County District Attorney's Office and to enter a new order granting the motion to disqualify and disqualifying the Santa Clara County District Attorney's Office

14

from prosecuting petitioner Christopher Schumb.  Upon finality of this opinion, the temporary stay order is vacated.

_____
Grover, J.

**WE CONCUR:**



_____
Elia, Acting P. J.



_____
Wiseman, J.*



**H048548 -** *Jensen v. Superior Court*
_____
*Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| | |
|---|---|
| Trial Court | Santa Clara County Superior Court<br>Case No.: C2010724 |
| Trial Judge | Hon. Eric S. Geffon |
| Attorneys for Petitioner<br>Christopher Schumb | Kathleen Sherman<br>  Kathleen Sherman Law<br>J. Joseph Wall, Jr.<br>  Wall Law Firm |
| Attorneys for Respondent<br>The Superior Court of Santa Clara<br>County<br><br>Attorneys for Real Party in Interest<br>The People | Xavier Becerra<br>  Attorney General of California<br>Lance E. Winters<br>  Chief Assistant Attorney General<br>Jeffrey M. Laurence<br>  Senior Assistant Attorney General<br>Seth K. Schalit<br>  Supervising Deputy Attorney General<br>Bridget Billeter<br>  Deputy Attorney General |